THE STATE OF OHIO, APPELLEE, *v.* DUERR, APPELLANT.

(No. C-810803—Decided November 17, 1982.)

Mr. Simon L. Leis, Jr., prosecuting attorney, Mr. William E. Breyer, Mr. Carl W. Vollman and Mr. Michael R. Barrett, for appellee.

Mr. Wm. Stewart Mathews II, Mr. James M. Rueger and Mr. Fred H. Hoefle, for appellant.

PALMER, P.J. The defendant-appellant, Catherine Duerr, was indicted on a charge of the aggravated murder of her adoptive father, Raymond Duerr. Indicted with her on the same charge were her mother, Carol Duerr, and Dennis Goerler. Separate trials were requested and granted. In due course, an evidentiary hearing was held on the defendant's motion to suppress, heard by stipulation along with similar motions by the other two defendants, and the motion was overruled. Immediately following the conclusion of the separate trials of Carol Duerr and Dennis Goerler, the instant matter proceeded to trial by jury, at the conclusion of which the defendant was found guilty as charged and was sentenced as appears of record. Appeal was timely filed, with five assignments of error raised for review, considered here, for reasons which will become obvious, other than in their numbered order of presentation.

The trial in the instant appeal, the third in point of time of the triumvirate indicted for the aggravated murder of Raymond Duerr, produced substantially the same testimony and evidence on behalf of the state as did the two earlier trials of Carol Duerr and Dennis Goerler,[1] and has produced three assignments of

---

[1] *State v. Goerler* (Nov. 17, 1982), Hamilton App. No. C-810778, unreported, and *State v. Duerr* (1982), 8 Ohio App. 3d 396.

error raising substantially the same questions explored and decided in *State* v. *Duerr* (1982), 8 Ohio App. 3d 396. Because of this substantial identity, no attempt will be made herein to reproduce the analysis of fact and issue set forth fully in our disposition of that appeal, which we adopt as fully as though set forth herein. We will accordingly limit our discussion of these common assignments of error — the third, fourth, and fifth — to such points of dissimilarity or differentiation from those cases as may be said to arise under the record of the instant case.

In the case of the fourth assignment of error, which raises the issue of whether the state had adduced sufficient evidence of the *corpus delicti* prior to offering the defendant's confession, and the fifth assignment of error, which argues that the court erred in overruling the motion to suppress the confession, the issues and facts are essentially identical with those raised, considered, and ruled upon in *State* v. *Duerr, supra.* For the reasons set forth therein, these two assignments of error are overruled. In the case of the third assignment of error, which raises the issue of the independent proof of a conspiracy necessary to precede introduction of out-of-court statements of co-conspirators, we again adopt the rule of *State* v. *Duerr, supra,* that such independent proof of a conspiracy may be satisfied, as here, by the statement of the defendant herself. With certain minor and non-prejudicial exceptions,[2] all such statements of co-conspirators postdated the introduction of Catherine Duerr's confession, which furnished proof of the conspiracy and thus provided the basis for such out-of-court declarations. We find no error prejudicial to the defendant and overrule the third assignment of error.

In her two remaining assignments of error, which will be considered in inverse order, issues unique to the instant appeal are presented for review. In her second assignment of error, the matter in dispute is stated thusly:

"The trial court erred to the prejudice of defendant-appellant by allowing evidence of extrajudicial inculpating statements made by co-defendants to be brought before the jury in her trial."

The citation within this assignment of error to those portions of the record relied upon to exemplify the error,[3] as well as

---

[2] The only instances we have been able to discover from the record where pre-confession statements of co-conspirators may be said arguably to have occurred are as follows: where the witness Pensak testified to an introduction of Catherine Duerr's boyfriend, performed by Carol Duerr after the homicide had been discovered; where Pensak related a statement made by Carol Duerr, to the effect she was going to let her dogs in, to neighbors searching the house after the discovery of the body; and where Pensak stated that Carol Duerr answered "no" to an inquiry about her husband's ownership of guns. Another witness, Carl Boltz, was permitted to testify to the introduction by Catherine Duerr of Dennis Goerler to Boltz, and that Carol Duerr had requested Boltz to fix her an alcoholic drink at one point during the evening of the 19th. The instances are trivial and fail, beyond reasonable doubt, to involve prejudice.

[3] "Q. Let me ask you this, Officer. What did Cathy tell you in her statement that you had not already heard at that time? Anything?

"MR. MATHEWS: Objection.

"THE COURT: Overruled.

"A. There were several different things that we learned from Cathy that we didn't learn from Dennis. Cathy told us about how they tried placing some shells in the gun they had, that they were the wrong size.

"Q. Did she tell you what caliber ammunition they tried and didn't work?

"A. I believe she stated it was .25 caliber.

"Q. And, Officer, in the course of your investigation, were you later able to verify the fact Dennis Goerler purchased .25 caliber ammunition?

"A. Yes, sir, Swallens.

"Q. What else did she tell you that Dennis didn't tell you?

"MR. MATHEWS: Again, going to object.

the defendant's statement of the issue for review under the assignment of error, to wit: "[a]n accused's right of cross-examination secured by the confrontation clause of the Sixth Amendment is violated by the comparison, during trial, of extra-judicial statements made by a co-defendant inculpating the accused, with a statement given by the accused, which was previously introduced into evidence," seems to us to manifest a certain confusion of concepts. The defendant appears to postulate a general rule that the out-of-court confession of one conspirator may never be used against a co-conspirator because it violates the Sixth Amendment right of cross-examination, citing *Bruton* v. *United States* (1968), 391 U.S. 123. Yet *Bruton* involves a case where the co-conspirators were also *co-defendants,* and does not speak to the instant case, where separate trials were granted the con-

spirators pursuant to Crim. R. 14, a rule designed to preclude just such prejudicial effect as *Bruton* speaks to. Under the facts here, it seems to us, the issue of whether an out-of-court confession of a co-conspirator will be admitted into evidence becomes one that asks whether the confession is *competent* evidence, not whether it is *constitutional.* Obviously, *any* out-of-court statement offered for the truth of the matter asserted will affect to some degree the right of confrontation and cross-examination. Yet, we know that there are certain of such statements which, because of their special nature or qualities, are either *excluded* from the hearsay rule, Evid. R. 801(D), or may be qualified as competent by special statute or rule, Evid. R. 802, or are listed *exceptions* to the general rule of hearsay exclusion, Evid. R. 803. Clearly, then, not every hearsay proffer raises an insur-

---

"THE COURT: Overruled.

"A. She explained after the killing, she explained Dennis came out of the house with a pair of rubber gloves which Dennis didn't tell us.

"Q. Officer, were you later able to verify, in fact, Cathy's mother, Carol, had gone to Kunkel's Pharmacy and purchased the rubber gloves?

"A. Yes, sir.

"Q. And what else did she tell you that Dennis didn't tell you?

"MR. MATHEWS: To which I object, again.

"THE COURT: Same ruling. You may answer.

"A. She also explained when her father reached the top of the steps how he was to be shot in the head and fall back down the stairs. Dennis didn't mention that.

"Q. Anything else in detail she told you Dennis didn't tell you.

"MR. MATHEWS: To which I object, Your Honor.

"THE COURT: Same ruling. You may have a continuing objection in this area.

"MR. MATHEWS: Thank you, Your Honor.

"A. She explained in a little more detail

how they drove down to the river to dispose of the weapon, the gloves and the towel.

"Q. Did she give you the exact route they took?

"A. I believe she did, yes.

"Q. What else did she tell you that Dennis didn't tell you?

"MR. RUEGER: Excuse me, Your Honor. I think there's a question pending, isn't there?

"THE COURT: Right, let the witness answer.

"A. Offhand, I can't remember anything right now.

"Q. Officer, do you recall whether or not Dennis Goerler mentioned the fact that he was to receive an automobile for his particular part in this incident?

"MR. MATHEWS: Objection.

"THE COURT: He may answer.

"A. He didn't mention it, Cathy did.

"Q. Cathy mentioned the automobile?

"A. Yes, sir.

"Q. Who mentioned insurance?

"A. We brought the insurance up, discussed it with Cathy. She stated how she was going to get a car and also Dennis.

"Q. Dennis did not mention that in his statement, though?

"A. No, sir."

mountable Sixth Amendment question. *Ohio* v. *Roberts* (1980), 448 U.S. 56, 63.

We believe that the real issue raised in defendant's second assignment of error is whether the trial court erred in admitting the testimony in question because of general incompetence as hearsay. In addressing this problem, several things should be preliminarily noted. First, the *confession*, as such, of the defendant's co-conspirators, was not sought to be introduced into evidence. A review of footnote 3, where the disputed testimony is set out, demonstrates that the testimony of what the co-conspirators may have said in their confessions was at most indirect, *i.e.*, it consisted of questions designed to elicit differences between the facts asserted in the defendant's confession and those contained in Goerler's earlier confession. The *relevance* of this series of questions is said to be an attempt by the state to counter the argument made by defendant in her counsel's opening and closing statements, that Goerler forced or influenced her to make the confession which was not, it was thus argued, a voluntary and knowing act on her part. The fact that there were significant differences in the two statements, argues the state, is relevant to counter this suggestion that it was dictated, in effect, by Goerler.

Second (assuming, for the moment, that the confessions, as such, were nevertheless somehow before the court), it seems apparent that the exclusion applicable to earlier statements of the co-conspirators admitted into evidence pursuant to Evid. R. 801(D)(2)(e), and made the subject of our disposition of the third assignment of error herein (and more fully in our disposition of the third assignment of error in *State* v. *Duerr, supra*), is not available in the instance of the confessions. It seems clear that when Goerler confessed his complicity in the crime and implicated Carol Duerr and the defendant as co-conspirators, the confession could no longer be said to have been a statement made "during the course and in furtherance of the conspiracy," Evid. R. 801(D)(2)(e), not even with the qualification offered by *State* v. *Shelton* (1977), 51 Ohio St. 2d 68 [5 O.O.3d 42], as to statements made after the crime but while the conspirators were still concerned with concealing their conduct or identity. When Goerler confessed, all questions of concealment of conduct and identity had passed.

These subsidiary matters behind us, we can progress to the principal question raised in this assignment of error: does the testimony in question constitute hearsay inadmissible by Evid. R. 802, and did the court commit prejudicial error in admitting it? We think not. As we earlier commented, the questioning was indirect. With one possible exception relating to whether Goerler confessed that he was to receive an automobile as his part of the bargain — to which the answer was negative and which we cannot conceive was prejudicial — all of the questions were directed to what the *defendant* said that may have supplemented or differed from Goerler's confession. The defendant argues that this sort of questioning necessarily put Goerler's confession before the jury, *i.e.*, if Witness A disagrees with Witness B when A says it was light, then one necessarily infers that B said it was dark. We conclude, however, that while this logic may be acceptable where the alternatives are limited and opposed, as between light and dark, such is not the instant case. Here, every question asked and answered, with one exception mentioned above, related to matters confessed by the defendant which *supplemented* that received from Goerler. The only inference the jury could have drawn from this was the obvious — not what Goerler said, but only what he did *not* say. Under these circumstances, we do not see the involvement of the hearsay rule at all. The second assignment of error is overruled.

Finally, the defendant asserts in her

remaining assignment of error that the trial court erred in overruling her motion for a change of venue, and her challenge for cause of the panel of jurors selected to try the cause. The defendant's issue presented for review phrases the matter with particularity:

"Every person charged with a serious offense is entitled to trial by a fair and impartial jury as a matter of right under the United States and Ohio Constitutions, and it is reversible error to proceed to trial over objection of the defendant where half the jurors who voted to convict the accused were aware that the trials of the co-defendants alleged by the state to have conspired with the accused to commit the murder ended in conviction of the co-defendants."

The factual circumstance giving rise to the question raised in this issue may well be repeated at this point. It will be recalled that the defendant, her mother, Carol Duerr, and Dennis Goerler were indicted jointly for aggravated murder, but were granted separate trials pursuant to Crim. R. 14. Dennis Goerler and Carol Duerr were tried separately and simultaneously, but since the defendant and Carol Duerr had common counsel, a simultaneous trial of the latter two was impossible. The defendant was, therefore, tried about two weeks after verdicts of guilty had been returned in the two earlier cases. These verdicts were, of course, the subject of reporting in both the printed and electronic media, including references to the conspiracy aspect of the cases. Defendant argues that this reportage of the earlier related cases, and the knowledge thereof admitted by about half the jurors ultimately seated, inevitably prejudiced the defendant's constitutional right to a fair and impartial jury requiring a change of venue and/or a discharge of the panel, citing *State* v. *Wilson* (1972), 29 Ohio St. 2d 203, 211 [58 O.O.2d 379].

We have reviewed the extensive record of the *voir dire* examination and jurors' instructions, occupying over one hundred fifty pages of the transcript of the proceedings, and conclude that the court did not err in overruling the motions for a change of venue and for a challenge for cause of the panel of jurors. We note, first, that the trial court postponed its ruling on the motion for a venue change until completion of the *voir dire* process permitted an informed conclusion by the trial judge as to whether pretrial publicity would prevent a "fair and impartial trial." Crim R. 18(B). This procedure has been accepted and approved in numerous decisions.

"There are, of course, rare cases in which local publicity has been so pervasive and prejudicial that inquiry by *voir dire* is unnecessary and a change of venue is constitutionally required. * * * In general, however, a careful and searching *voir dire* provides the best test of whether pretrial publicity has prevented obtaining a fair and impartial jury from the locality." *State* v. *Bayless* (1976), 48 Ohio St. 2d 73, 97-98 [43 O.O.2d 50], vacated on other grounds (1978), 438 U.S. 911.

See, also, *State* v. *Swiger* (1966), 5 Ohio St. 2d 151 [34 O.O.2d 270], certiorari denied (1966), 385 U.S. 874; and *State* v. *Drake* (June 10, 1974), Hamilton App. No. C-73215, unreported.

At the conclusion of the *voir dire* examinations, the motion for a change of venue was overruled, and we find no error in having done so.

While the media accounts of the crime and the proceedings thereafter were fully and prominently reported, we find none of the circus atmosphere, nor what the *Bayless* case, *supra,* termed the "pervasive" — *"intrusive"* might be a better word — effects of publicity which would have required a change of venue without more. See, *e.g., Rideau* v. *Louisiana* (1963), 373 U.S. 723; *Sheppard* v. *Maxwell* (1966), 384 U.S. 333. We proceed then, to an analysis of the *voir dire* examinations to review the trial court's determination as to whether a fair and impartial trial

may be had in the community. It is clear from the examination that roughly half of the jurors seated, after both sides had exhausted their peremptory challenges, had heard or read some part of the accounts of the preceding trials and most or all had some knowledge of the crime in question from media accounts. It is also clear that, after skilled and searching examinations of those potential jurors so responding to counsel for the defendant, in each such instance the juror unequivocally responded that he or she would place such knowledge out of mind, and would render a verdict based only on the evidence and in accordance with law. Nothing in this record would warrant us in holding that the trial court could not credit these protestations and affirmations by the jurors, and nothing in the record would permit us to conclude that the procedures followed in the *voir dire* were insufficient to develop fully the evidence necessary to determine properly the motion for venue change. As a result, we find no error, whether constitutional or under Crim. R. 18(B), in overruling the motion for a change of venue.

The second aspect of defendant's argument under this assignment of error is more searching. The defendant argues, in effect, that no matter what response a potential juror may make to *voir dire* questioning, no matter what his affirmation that he will abjure all prior knowledge and follow only the evidence and the law, he is irremediably and *per se* prejudiced if he concedes knowledge of the results of a prior trial of a co-conspirator of the defendant. The defendant relies on the well-established rule that *evidence* of the earlier conviction of a co-conspirator of the defendant is inadmissible because its prejudicial effect outweighs its doubtless probative value, citing *United States* v. *Toner* (C.A. 3, 1949), 173 F.2d 140. The defendant reasons that such prejudice is just as intrusive when the knowledge of the earlier conviction comes from sources preceding

and independent of the trial, or when it results during the course of the *voir dire* examination itself (as was the case with the other half of the jurors who were not previously aware of the results of the earlier trials). No instruction or affirmation, argues the defendant, will suffice to drive this knowledge from a juror's mind, or leave unimpaired his ability to decide the issues fairly and impartially. The precise point appears to be one of first impression in this jurisdiction. Indeed, counsel cite us to no authorities here or elsewhere which may be said to deal directly with the issue.

We conclude, on balance, against the rigid position argued by the defendant. It is instructive to note the fourteen specific bases listed in Crim. R. 24(B) for challenges for cause. None of them is directly on point, unless it may be said to be subsumed within the catchall provision of Crim. R. 24(B)(14) "[t]hat he is otherwise unsuitable for any other cause to serve as a juror." Of greater importance, we think, is the following provision of Crim. R. 24:

"(B) Challenge for Cause. A person called as a juror may be challenged for the following causes:

"* * *

"(9) That he is possessed of a state of mind evincing enmity or bias toward the defendant or the state; but no person summoned as a juror shall be disqualified by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused, if the court is satisfied, from the examination of the juror or from other evidence, that he will render an impartial verdict according to the law and the evidence submitted to the jury at the trial."

Under the terms of the above provision, a juror may be seated, *notwithstanding a previously formed opinion of the defendant's guilt,* upon the court being satisfied from the *voir dire* examination that he will nevertheless render an impartial verdict according to the law and the

evidence. It therefore follows, *a fortiori,* that a juror who has formed no such opinion or impression, but who is merely aware of some of the publicized circumstances of the case and of the fate of co-conspirators of the defendant, ought not to suffer a challenge for cause when, as here, the court is satisfied, from an examination of the juror or other evidence, that he will render an impartial verdict according to the law and the evidence submitted to the jury at the trial. See *Dobbert* v. *Florida* (1977), 432 U.S. 282, rehearing denied (1977), 434 U.S. 882.

But even more basic than the foregoing are our firm conclusions after a thorough review of the record that: the issues in the instant case, including those relating to the qualification and seating of jurors, were vigorously presented by competent and aggressive trial counsel for both the defendant and the state; that the trial atmosphere, including the *voir dire* process, was maintained by an experienced trial judge in a correct, low-keyed, and entirely professional posture eminently suitable for the pursuit of truth, devoid of hysteria or *ad hominem* irrelevancies; and that the defendant received therein a fair trial from an impartial jury.

The first assignment of error is overruled, and the judgment is affirmed.

*Judgment affirmed.*

DOAN and KLUSMEIER, JJ., concur.