OPINION *Page 2 
{¶ 1} Defendant-appellant Marion D. Weaver appeals his conviction and sentence entered by the Holmes County Court of Common Pleas on one count of retaliation, in violation of R.C. 2921.05(A); and one count of extortion, in violation of R.C. 2905.11(A)(3), following a jury trial. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On August 16, 2005, the Holmes County Grand Jury indicted Appellant on the aforementioned charges as well as one count of aggravated menacing, in violation of R.C. 2903.21. Appellant appeared before the trial court for arraignment and entered a plea of not guilty to the Indictment. On November 14, 2005, the State provided Appellant with a Bill of Particulars, which included the following language: "* * * said statements and actions and personal knowledge of the [Appellant's] personal character and history, caused complainant to believe that [Appellant] would cause him and his family serious physical harm and/or harm to his personal property (including his business) * * *." Approximately one and one-half years prior to the events giving rise to the instant Indictment, in March, 2004, Appellant stood trial for murder in the Holmes County Court of Common Pleas for a shooting which occurred in September, 2003, and resulted in the death of a twenty-three year old Amish man. The jury ultimately convicted Appellant of negligent homicide, a misdemeanor offense.
 {¶ 3} Prior to trial in the instant action, Appellant filed a Motion for Change of Venue, asserting any potential jury pool in Holmes County would be unfairly biased against him due to the negative pretrial publicity in light of the prior criminal action. Appellant also filed a Motion in Limine, requesting the trial court prohibit the State from, *Page 3 
in any way, commenting or referencing the prior criminal conviction. The trial court denied both motions.
 {¶ 4} The jury trial commenced on November 21, 2005. The trial court, recognizing most of the fifty plus potential jurors summonsed probably knew of Appellant, gave each party twenty minutes to ask the jury general questions. Thereafter, the trial court conducted an individual voir dire. The trial court overruled Appellant's challenges for cause of Juror #11 and Juror #18. After Appellant exercised all of his peremptory challenges, Juror #11 and Juror #18 remained on the panel.
 {¶ 5} After the jury was empanelled, the parties began the presentation of their respective cases. The following facts were adduced at trial.
 {¶ 6} Louis Ritchie is the principal owner and president of Millersburg Ice, located in Millersburg, Holmes County, Ohio. For over fifteen years, Appellant had a business relationship with Ritchie and Millersburg Ice. Millersburg Ice sells blocks of ice at wholesale to "jobbers", who in turn deliver the ice from house to house among the Amish. Appellant was a "jobber". Millersburg Ice invoiced the jobbers every Monday for the previous week. Over the length of his relationship with the company, Appellant incurred a substantial debt for unpaid invoices. In 1998, Ritchie prepared, and Appellant executed, a cognovit note, which reflected a debt of approximately $35,000. Millersburg Ice allowed Appellant to continue purchasing ice on credit. Appellant made some payments on the debt.
 {¶ 7} On December 18, 2003, Millersburg Ice filed a Complaint to collect on the cognovit note. The trial court granted default judgment against Appellant, and ordered Appellant to appear for a debtor's examination. Appellant failed to appear. The trial *Page 4 
court conducted a Show Cause Hearing on May 5, 2004. After Appellant again failed to appear, the trial court issued a warrant. Appellant was arrested, which provided counsel for Millersburg Ice an opportunity to conduct the debtor's exam. On June 24, 2004, Millersburg Ice filed a Complaint for Foreclosure of Judgment Lien. Appellant appeared for a case management conference on September 24, 2004, but did not file an answer to the complaint. The trial court issued a judgment entry of foreclosure and ordered the sale of Appellant's residence and real estate. Appellant filed bankruptcy, which stayed the sale of the property. The Bankruptcy Court ultimately denied Appellant's petition because of his failure to have a qualified plan for repayment. The sale was rescheduled and the property was sold on June 9, 2005.
 {¶ 8} On the evening of June 2, 2005, prior to the court ordered sale, Ritchie, who is seventy-one years old, was grocery shopping at the Millersburg Wal-Mart. Appellant was also at the Wal-Mart store that evening, and noticed Ritchie. Appellant approached Ritchie, and began to curse and threaten him in an angry and belligerent manner. Appellant blasted Ritchie, yelling, "You lied in court, you son of a bitch." Appellant warned, "I will get you if it is the last thing I ever do, you cocksucker."
 {¶ 9} Scott and Pam Akins were likewise in the Wal-Mart store that evening and heard appellant's tirade. Scott Akins is a captain with the Millersburg Police Department, and Pam Akins, his wife, is a captain with the Holmes County Sheriff's Department. Both Akins were off duty at the time of the incidence. Scott Akins recalled hearing someone yelling at someone else. He walked down the aisle and observed Appellant and Ritchie, who were approximately 37 feet away. Akins testified he could see Appellant was very upset, which concerned the officer an assault might take place. *Page 5 
Akins recounted the tone and volume of Appellant's voice revealed the depth of Appellant's anger. Pam Akins testified similarly. Neither Akins nor his wife intervened during the incident. They did not make contact with Ritchie immediately following the incident. Pam Akins contacted the police department the following day to determine if Ritchie filed a complaint. Appellant did not deny the incident, but stated his whole intention was to let Ritchie know he [Appellant] intended to institute legal proceedings against him [Ritchie].
 {¶ 10} After hearing all the evidence and deliberations, the jury found Appellant guilty of extortion and retaliation, but not guilty of aggravated menacing. Following a presentence investigation and a psychological evaluation of Appellant, the trial court sentenced Appellant to a term of four years imprisonment on each charge. The trial court ordered the terms be served concurrently. The trial court memorialized Appellant's conviction and sentence via Judgment Entry filed January 12, 2006.
 {¶ 11} It is from this judgment entry Appellant appeals, raising the following assignments of error:
 {¶ 12} "I. THE TRIAL COURT ABUSED ITS DISCRETION AND DENIED APPELLANT HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL PURSUANT TO THE UNITED STATES AND OHIO CONSTITUTIONS BY NOT GRANTING A CHANGE OF VENUE.
 {¶ 13} "II. THE TRIAL COURT DENIED APPELLANT HIS RIGHT TO A FAIR TRIAL BY NOT REMOVING JURORS WHO EXPRESSED UNFAVORABLE OPINIONS ABOUT THE APPELLANT. *Page 6 
 {¶ 14} "III. THE TRIAL COURT ERRED IN SENTENCING APPELLANT IN EXCESS OF THE STATUTORY MINIMUM AND BY RELYING ON SENTENCING FACTORS DETERMINED TO BE UNCONSTITUTIONAL BY THE SUPREME COURT OF OHIO.
 {¶ 15} "IV. MISCONDUCT BY THE PROSECUTING ATTORNEY RESULTED IN THE DENIAL OF THE APPELLANT'S RIGHT TO A FAIR TRIAL.
 {¶ 16} "V. APPELLANT'S CONVICTIONS FOR RETALIATION AND EXTORTION ARE AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."
 I {¶ 17} In his first assignment of error, Appellant contends the trial court abused its discretion and violated his constitutional right to a fair trial in failing to grant Appellant's request for a change of venue.
 {¶ 18} A person accused of a criminal offense is entitled to a trial with evidence properly presented to a fair and impartial jury. See,Irwin v. Dowd (1961), 366 U.S. 717, 81 S.Ct. 1639, 6 L .Ed.2d 751. The trial court must decide in its discretion whether jurors who serve will be able to decide the case solely on the evidence presented. State v.Montgomery (1991), 61 Ohio St.3d 410. A trial court must also examine the totality of local circumstances when determining whether to change the venue of a given case. Irwin, supra, at 721.
 {¶ 19} "[A] careful and searching voir dire provides the best test of whether prejudicial pretrial publicity has prevented obtaining a fair and impartial jury from the locality." Id., quoting State v.Landrum (1990), 53 Ohio St.3d. 107, 117, 559 N.E.2d 710, *Page 7 
quoting State v. Bayless (1976), 48 Ohio St.2d 73, 98, 357 N.E.2d 1035. "[A] defendant claiming that pretrial publicity has denied him a fair trial must show that one or more jurors were actually biased." Id., quoting State v. Gross, 97 Ohio St.3d 121, 2002-Ohio-5524 at ¶ 29. Even pervasive adverse pretrial publicity does not inevitably lead to an unfair trial. Nebraska Press Assn. v. Stuart (1976), 427 U.S. 539, 554,96 S.Ct. 2791, 49 L.Ed.2d 683.
 {¶ 20} Furthermore, in the interests of judicial economy, convenience, and reduction of public expenses, the trial court must make a good faith effort to seat a jury before granting a change of venue. State v.Warner (1990), 55 Ohio St.3d 31, 46.
 {¶ 21} Appellant explains the issue before the jury was whether the words he uttered were threats as contemplated by the criminal statutes under which he was indicted. Appellant maintains, in order to decide this issue, the jury had to consider his reputation, and because the jury "had members who were predisposed to believe he was capable of committing violence on another person", he could not receive a fair and impartial trial in Holmes County. Brief of Appellant at 9. Appellant points to answers given by Juror #11 and Juror #18 in support of his position the jury was biased and could not decide the case solely on the evidence presented. Juror #11 remarked she had heard rumors Appellant was not a pleasant man and was violent. Juror #18 stated her husband told her the incident for which Appellant was standing trial involved threats made by Appellant.
 {¶ 22} A juror need not be totally ignorant of the facts and issues of the case, but can be exposed to publicity if the juror is able to set aside the pre-trial impressions and *Page 8 
render a verdict based solely on the evidence presented at trial. See,United States v. Johnson (C.A.6, 1978), 584 F.2d 148.
 {¶ 23} During the individual voir dire, Juror #11 and Juror #18 each assured the trial court and defense counsel she could decide the case solely on the evidence presented at trial. Having reviewed the transcript of the extensive voir dire in this matter, and the pertinent rulings in this regard, we conclude the trial court did not abuse its discretion in denying Appellant's request for a change of venue.
 {¶ 24} Appellant's first assignment of error is overruled.
 II {¶ 25} In his second assignment of error, Appellant asserts he was denied his right to a fair trial as a result of the trial court's failure to remove jurors who expressed unfavorable opinions about him.
 {¶ 26} "[T]he selection and qualification of jurors are largely under the control of the trial court and, unless an abuse of discretion is clearly shown with respect to rulings thereon, they will not constitute ground for reversal." State v. Trummer (1996), 114 Ohio App.3d 456, 461,683 N.E.2d 392, citing Berk v. Matthews (1990), 53 Ohio St.3d 161. A juror "* * * ought not to suffer a challenge for cause when the court is satisfied from an examination of the prospective juror or from other evidence that the prospective juror will render an impartial verdict according to the law and the evidence submitted to the jury at the trial." State v. Duerr (1982), 8 Ohio App.3d 404, 457 N.E.2d 843, paragraph two of the syllabus. *Page 9 
 {¶ 27} Appellant specifically refers to comments by Juror #3, Juror #11, and Juror #18. Appellant challenged each of these jurors for cause, but the trial court failed to remove them.
 {¶ 28} The trial court asked Juror #3 if he had anything he would like to say about his ability to be fair and impartial. Juror #3 answered he had known Appellant for quite some time, but did not consider Appellant a friend. When the trial court asked Juror #3 if he could be fair and impartial, Juror #3 replied, "Well, if all the things I've heard and know [,] I don't know." Tr. at 48. The trial court questioned him further, inquiring whether he could set aside the things he had heard and knew. Juror #3 stated he "guessed" he could be fair and impartial. In response to questions by the prosecutor, Juror #3 stated he would be able to keep whatever he knew about the 2003 incident out of his deliberations, and he could be fair and impartial to both the State and Appellant. To questions by defense counsel, Juror #3 responded he would deliberate only on the facts presented at this trial and not allow the prior incident to interfere with the deliberations.
 {¶ 29} Defense counsel asked Juror #3 about Appellant's prior criminal conviction. Juror #3 commented he felt Appellant should have been found guilty and gone to prison. Defense counsel asked again, "You still believe you will not allow that to interfere in any way with your deliberations on this case?" Juror #3 responded, "Yeah." When pressed further, Juror #3 stated he would do his best.
 {¶ 30} During her individual voir dire, Juror #11 stated she had heard Appellant is not a pleasant man to be around, and is violent. Tr. at 107. Juror #11 recalled hearing rumors Appellant owed money to Millersburg Ice, and the owners and employees were *Page 10 
scared to contact him about the money and were scared of what Appellant would do if they stopped supplying Appellant with ice. The trial court asked Juror #11 if she could be fair and impartial to Appellant, to which she responded, "I'm not sure. I would like to think I would be because I've always taught my kids that you cannot judge everything you hear, that you have to listen to the facts. So, you know, I would like to think I could be." Tr. at 107. In response to a second question from the trial court, Juror #11 asserted she could put aside what she had heard and be fair and impartial. Juror #11 told the prosecutor she understood rumors were not testimony, and rumors had to be left outside of the courtroom.
 {¶ 31} In response to questions from defense counsel, Juror #11 noted the prior events had nothing to do with the present case and information regarding the prior case would not influence her in making a decision. Although Juror #11 conceded a person probably could not help but be influenced by the rumors he/she had heard, she stated she would be as fair as she could. At the end of defense counsel's questioning, the trial court again asked Juror #11 if she could be a fair and impartial juror, to which she responded, "Yes". Tr. at 113.
 {¶ 32} With respect to Juror #18, the trial court questioned her as to whether she believed she could be a fair and impartial juror. Juror #18 also responded, "Yes." Juror #18 acknowledged she had heard about the incident at Wal-Mart, and that angry words were spoken, but did not know the details. When asked whether what she heard caused her to form an opinion as to whether Appellant is guilty or not guilty, Juror #18 replied, "Possibly." The trial court asked again whether she could be fair and impartial *Page 11 
and set aside what she had heard, and Juror #18 stated she could do so. She informed the prosecutor she had no reason not to be fair and impartial to the State or to Appellant.
 {¶ 33} Fairness requires impartial, indifferent jurors. Yet jurors need not be totally ignorant of the matter before them. Murphy v.Florida (1975), 421 U.S. 794, 799-800, 95 S.Ct. 2031, 44 L.Ed.2d 598. As stated, supra, the decision to disqualify a juror for cause is a discretionary function of the trial court and will not be reversed on appeal absent an abuse of discretion." Berk v. Matthews (1990),53 Ohio St.3d 161, syllabus. Further, "deference must be paid to the trial judge who sees and hears the juror." State v. McCoy, Richland App. No. 2005-CA-0025, 2006-Ohio-1320 (Citation omitted).
 {¶ 34} The trial court denied Appellant's challenges for cause of Juror #3, Juror #11, and Juror #18. We have reviewed the pertinent voir dire portions of the trial transcripts with respect to those jurors and are unable to find the trial court abused its discretion in seating those jurors. Each juror stated his/her intention to be impartial and decide the case on the facts. The trial court was free to accept their assurances they would do just that.
 {¶ 35} Accordingly, Appellant's second assignment of error is overruled.
 III {¶ 36} In his third assignment of error, Appellant challenges his sentence in light of the Ohio Supreme Court's decision in State v.Foster, 109 Ohio St.3d 1, 2006-Ohio-856. We agree.
 {¶ 37} Because Appellant's sentence is based upon an unconstitutional statute which was deemed void in Foster, supra, Appellant's third assignment of error is *Page 12 
sustained. Accordingly, we vacate Appellant's sentence and remand the matter for resentencing in accordance with Foster, supra.
 IV {¶ 38} In his fourth assignment of error, Appellant contends he was denied his constitutional right to a fair trial as a result of prosecutorial misconduct.
 {¶ 39} When determining whether a prosecutor's conduct rises to the level of prosecutorial misconduct, an appellate court must decide whether the prosecutor's actions were improper, and, if so, whether the substantial rights of the defendant were actually prejudiced. State v.Smith (1984), 14 Ohio St.3d 13, 14. Ultimately, the prosecuting attorney's trial conduct can only be made a ground for error on appeal if the conduct deprives the defendant of a fair trial. State v.Apanovitch (1987), 33 Ohio St.3d 19, 24. Furthermore, "[i]solated comments by a prosecutor are not to be taken out of context and given their most damaging meaning." State v. Hill (1996), 75 Ohio St.3d 195,204, recon. den., (1996), 75 Ohio St.3d 1453. The appellant must show that there is a reasonable probability that but for the prosecutor's misconduct, the result of the proceeding would have been different.State v. Loza (1994), 71 Ohio St.3d 61, 78-79, overruled on other grounds.
 {¶ 40} Counsel is afforded wide latitude during closing argument to present the most convincing position on behalf of his or her client. It is proper for the prosecution to comment on the evidence in closing argument and to state the appropriate conclusions to be drawn there from. State v. Draughn (1992), 76 Ohio App.3d 664, 670.. The prosecution may urge its theory of what the evidence indicates, so long as it does not mislead the jury. State v. Malone (Sept. 24, 1986), 9th Dist. Nos. 12533 12542. *Page 13 
 {¶ 41} Appellant specifically takes issue with statements made by the prosecutor during closing remarks. The prosecutor's closing argument included the following:
 {¶ 42} "The last charge I'm going to ask you to return a verdict of guilty on Extortion. * * * But look at what it means, the elements. With purpose to obtain anything of value or valuable benefit. Anything of value or valuable benefit. "If you sell my house I will get you if it's the last thing I do." "What did you think he meant by that, Mr. Ritchie?" "I think he wanted me to stop the sale." There's the thing of value. What the defendant told you is he was going to institute legal proceedings. That's what he was talking about. He never did that. From December 31, 2003, week after Christmas when he knew about the judgment on the note, he knew about that debt that was ordered by this Court. April, doesn't show up to court. Doesn't [show] up for his debtor's exam. Show cause hearing doesn't show up. May he shows up. Doesn't enter into any agreement; doesn't institute any legal proceedings; doesn't attempt to set aside that judgment. Waits for it to go all the way through they have to file a foreclosure. They have to file a foreclosure. At any time he could have paid off this debt and any time he very well could have because the bankruptcy judge under oath that he had a $90,000 gun collection. This could have been satisfied. None of the legal proceedings would have gone anywhere. But he didn't. He didn't file an answer on the foreclosure. * * *
 {¶ 43} "He didn't want the house to pay for sale that has to take place. `I would do anything I would to forestall the sale of my house.' And the only thing he ever did was threaten Mr. Ritchie. It's the only action he ever took.
 {¶ 44} "* * * *Page 14 
 {¶ 45} "`I'm going to get you you son-of-a-bitch.' It's [sic] that an attempt to make Mr. Ritchie to [sic] believe he would cause him physical harm. Yes. Why? `If they sell my house I'm going to get you.' * * * He wants the sale to go away and he's not done anything on it so the only way he can do it is to run down Mr. Ritchie in the yogurt section of the dairy aisle and say to him in that forceful, threatening manner that all three of the witnesses told you that they heard and saw and felt. It's the only thing he eve [sic] did.
 {¶ 46} "* * *
 {¶ 47} "The Judge is going to give you an instruction as to what you do with a witness' testimony that you've heard. You can believe it all, you can disbelieve it all or you can believe some or part of it. * * * You're here to make your decisions based on the facts and circumstances you determine are from the witness stand and apply that to the law. How many of you shook your head and said `Yes, I will follow my oath,' when they asked you that. And your oath is to find the facts and apply the law as the Judge instructs you it is. You don't do it in a vacuum, youuse your common sense.
 {fn48} "I guess sometimes I was at a loss to figure out you can say that `Oh I said those word [sic], but I didn't mean anything by them. I don't deny saying them. All I meant was to engage in a business discussion.' Well, use your facts and use your common sense and say `Well, if that's true, what else did you do to show us that that's what you meant?' You know what his purpose was because of the manner in which he said it. You know what his purpose was because of all the things that had happened in the past. He had no intention of satisfying that debt (unintelligible.) The only thing he ever did was confront Mr. Ritchie about it." Tr. at 354-356. (Emphasis added). *Page 15 
 {¶ 49} Appellant contends the prosecutor's advising the jury it could not decide the case in a vacuum was, in reality, an instruction to the jury to decide the case on "their highly prejudicial beliefs about the Appellant." Brief of Appellant at 19. Defense counsel failed to object to the alleged acts of prosecutorial misconduct. Errors not brought to the trial court's attention are waived unless such errors rise to the level of "plain error". "Plain error" is an obvious or defect in the trial court proceedings, affecting substantial rights, which, but for the error, the outcome of the trial would be clearly otherwise. See,State v. Underwood (1983), 3 Ohio St.3d 13.
 {¶ 50} The prosecutor's closing argument must be viewed in its entirety to determine if the remarks regarding Appellant's past behavior were prejudicial. In the case sub judice, we conclude, after reviewing the prosecutor's closing argument the remarks did not prejudice Appellant. The prosecutor's implicit invitation to the jury to consider appellant's past referred to Appellant's past behavior with respect to the events which culminated in Appellant's threatening Ritchie. We conclude the prosecutor's statement was not improper and Appellant was not denied his right to a fair trial based upon the statements made by the prosecutor during closing argument.
 {¶ 51} Appellant's fourth assignment of error is overruled.
 V {¶ 52} In his final assignment of error, Appellant challenges the sufficiency and weight of the evidence with respect to his convictions for retaliation and extortion.
 {¶ 53} In State v. Jenks (1981), 61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: "An appellate court's function when reviewing the sufficiency *Page 16 
of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus.
 {¶ 54} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v. Thompkins, 78 Ohio St.3d 380,387, 1997-Ohio-52, citing State v. Martin (1983), 20 Ohio App.3d 172,175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
 {¶ 55} Appellant was convicted of one count of retaliation, in violation of R.C. 2921.05, which reads, in pertinent part:
 {¶ 56} "(A) No person, purposely and by force or by unlawful threat of harm to any person or property, shall retaliate against a public servant, a party official, or an attorney or witness who was involved in a civil or criminal action or proceeding because *Page 17 
the public servant, party official, attorney, or witness discharged the duties of the public servant, party official, attorney, or witness.
 {¶ 57} "* * *
 {¶ 58} "(C) Whoever violates this section is guilty of retaliation, a felony of the third degree."
 {¶ 59} Appellant was also convicted of one count of extortion, in violation of R.C. 2905.11, which provides, in relevant part:
 {¶ 60} "(A) No person, with purpose to obtain any valuable thing or valuable benefit or to induce another to do an unlawful act, shall do any of the following:
 {¶ 61} "(3) Violate section 2903.21 [Aggravated Menacing] or 2903.22 [Menacing] of the Revised Code;
 {¶ 62} "* * *
 {¶ 63} "(B) Whoever violates this section is guilty of extortion, a felony of the third degree.
 {¶ 64} "(C) As used in this section, "threat" includes a direct threat and a threat by innuendo."
 {¶ 65} Appellant maintains the State's evidence did not prove beyond a reasonable doubt the words he uttered were, on their face, threats as contemplated by these statutes. We disagree.
 {¶ 66} At trial, Louis Ritchie, Scott Akins, and Pam Akins testified regarding the statements they heard Appellant make to Ritchie. All three witnesses stated the statements were threatening in nature, both in content and tone. Ritchie testified he felt threatened by Appellant's words and, coupled with Appellant's actions, Ritchie was *Page 18 
concerned for his personal safety as well as the safety of his family and business. Additionally, both Scott Akins and Pam Akins considered the words spoken by Appellant to be threats.
 {¶ 67} The jury was free to accept or reject any or all of the testimony of the witnesses, and assess the credibility thereof. We do not find the jury's verdicts with respect to the extortion and retaliation charge to be against the manifest weight or sufficiency of the evidence.
 {¶ 68} Appellant's fifth assignment of error is overruled.
 {¶ 69} Appellant's convictions in the Holmes County Court of Common Pleas are affirmed but his sentence is vacated and the case remanded for resentencing per Foster.
Hoffman, P.J., Wise, J. and Delaney, J. concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, Appellant's convictions in the Holmes County Court of Common Pleas are affirmed. Appellant's sentence is vacated and the case is remanded to the trial court for resetnencing. Costs assessed to Appellant. *Page 1