[Cite as *State v. Buchanan*, 2023-Ohio-125.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                      CASE NO. 14-22-09

      v.

SARAH WHITE BUCHANAN,             O P I N I O N

      DEFENDANT-APPELLANT.

---

Appeal from Union County Common Pleas Court
Trial Court No. 21-CR-0111

Judgment Affirmed

Date of Decision: January 17, 2023

---

APPEARANCES:

    *W. Joseph Edwards* for Appellant

    *Courtland Perry* for Appellee

**MILLER, P.J.**

{¶1} Defendant-appellant, Sarah White Buchanan ("Buchanan"), brings this appeal from the March 16, 2022 judgment entry of the Union County Common Pleas Court sentencing her to five years of community control after she was convicted by a jury of extortion in violation of R.C. 2905.11(A)(5) a felony of the third degree. On appeal, Buchanan argues that there was insufficient evidence presented to convict her. For the reasons that follow, we affirm the judgment of the trial court.

*Background*

{¶2} On June 10, 2021, Buchanan was indicted for two counts of extortion in violation of R.C. 2905.11(A)(5), both felonies of the third degree. It was alleged that on May 7, 2021, Buchanan made multiple phone calls to her now-ex-husband, Tyler, threatening to ruin his life, his job, and his position as T-ball coach for their children if Tyler did not provide positive reports of Buchanan to children's services and to Tyler's mother, who was acting as temporary custodian for Tyler and Buchanan's three children due to the children being adjudicated dependent in September of 2020. Tyler recorded the May 7, 2021, calls between himself and Buchanan and provided them to law enforcement.

{¶3} Buchanan pled not guilty to the extortion charges and proceeded to a jury trial on January 18-19, 2022. At trial the State presented the testimony of Tyler,

the deputy sheriff who investigated Tyler's report, and Haley W., the ongoing caseworker in the children's services case. The State also played the recorded phone conversations for the jury.

{¶4} At the conclusion of the State's case, Buchanan made a Crim.R. 29 motion for acquittal, arguing, that the evidence did not support charges of extortion because Buchanan was not seeking anything of pecuniary value from Tyler; rather, she was seeking favorable reports to children's services in order to acquire more parenting time with her children. The State countered by arguing that the extortion statute did not specifically require pecuniary value, but rather something that was valuable to the person seeking it. The trial court agreed with the State, and overruled Buchanan's motion for acquittal.

{¶5} Buchanan rested her case without presenting evidence. The jury acquitted Buchanan of the first count of extortion, but convicted her of the second count of extortion. A pre-sentence investigation was ordered and sentencing was set for a later date.

{¶6} On February 2, 2022, Buchanan filed a renewed motion for judgment of acquittal, again arguing that the extortion statute required the "valuable thing" being sought by the defendant to be of tangible, pecuniary value. The trial court overruled Buchanan's motion, citing as support *State v. Cunningham*, 2d Dist. Clark No. 08-CA-09, 2008-Ohio-5164 (sufficient evidence was presented to support

extortion conviction where intangible benefit of a recantation of statement was sought by defendant).

{¶7} On March 16, 2022, the matter proceeded to sentencing. Buchanan was sentenced to five years of community control and notified that if she was found in violation of her community control, and her community control was revoked, she would be sentenced to prison for thirty months. It is from this judgment that Buchanan appeals, asserting the following assignment of error for our review.

**Assignment of Error**
**The evidence in this case was insufficient as a matter of law to support the conviction of appellant and as such, appellant's rights under the Fifth Amendment of the United States Constitution and Article 1, Section 16 of the Ohio Constitution were violated.**

{¶8} In her assignment of error, Buchanan argues that there was insufficient evidence presented to convict her of extortion. Specifically, she contends that the State did not establish that she acted "with purpose to obtain any valuable thing or valuable benefit."

Standard of Review

{¶9} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by state constitutional*

*amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Consequently, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33.

Controlling Statute/Authority

{¶10} Buchanan was convicted of extortion in violation of R.C. 2905.11(A)(5), which reads as follows:

(A)  No person, with purpose to obtain any valuable thing or valuable benefit or to induce another to do an unlawful act, shall do any of the following:

* * *

(5)  Expose or threaten to expose any matter tending to subject any person to hatred, contempt, or ridicule, or to damage any person's personal or business repute, or to impair any person's credit.

Evidence Presented at Trial

**{¶11}** In May of 2021, Buchanan and her ex-husband Tyler were proceeding through a divorce and they were also involved in a pending children's services case. Their three children had been adjudicated dependent in September of 2020 and the children were in the temporary custody of Tyler's mother. Buchanan and Tyler exercised supervised visitation with the children.

**{¶12}** Tyler testified that prior to May 7, 2021, Buchanan had called him multiple times and threatened to "ruin his life" if he did not provide favorable reports to his mother (the children's temporary custodian) and to children's services so that Buchanan could get more parenting time with the children. Buchanan threatened to speak to Tyler's employer, among others, about Tyler's conviction for menacing, about Tyler's purported alcoholism, and about allegations of rape that Buchanan had made against Tyler previously. Tyler testified that Buchanan's threatening calls were consistent, causing him to worry that Buchanan was going to act on her threats, so he decided to record his phone conversations with her.

**{¶13}** On May 7, 2021, Buchanan made multiple phone calls to Tyler that he recorded. During one of the calls, Buchanan, often yelling at Tyler, indicated that she wanted parenting time with the children on Mother's Day and she wanted Tyler to pressure his mother, who had custody of the children, to make it happen. Buchanan made the following statements while on the phone with Tyler.

That [Mother's Day] visit must happen if you would like your life to be able to continue, coaching and your job to continue * * * my other requirement from thereon-fucking-out is that from now on I start getting unsupervised visits with the kids, you guys don't throw a fit against that, and you guys help facilitate and make me getting more time with the kids sooner and say Sarah's doing such a great job, we've seen great improvement from Sarah, you know the kids love being around her, she's always smiling, she's always happy, she's managing the kids well, and we think that she's ready to move on with her parenting time. Okay? You and your mother have to start giving good reports to Haley [the ongoing caseworker]. And not just sending the negative. You know how you just sent something negative? Every single time that we see each other at visits and everything I want you to start emailing her [Haley] once a week the positive shit moving forward about how things are working out for us, that Ashley moved in, that you're moving on, that everything's positive, that everyone's happy and nice to each other, and don't say we communicate just say that there's no problem at any events where we see each other. Do you understand? Do you understand?

Tyler responds that he understands, then Buchanan continues.

> You facilitate this or I'm taking your job away, taking your fucking house away, and taking away your fucking coaching away and taking away your whole fucking life until you want to kill yourself. You facilitate it or this is what's gonna happen. Okay?

The discussion goes on a brief tangent wherein Tyler accuses Buchanan of damaging a tractor and he says he wants her to pay for the repairs so that he can sell it. She responds:

> Let me ask you a tiny little question * * * are you able to send nice emails about me? Do your fingers work? Are you able to do that?

Tyler replies that Buchanan needs to actually "do the nice things" she is talking about, but Buchanan retorts:

> No. No. You fucking better make something up that's nice, Tyler. I don't give a fuck. Okay? I will try to do whatever nice things I can. You can't tell her I pay for shit. You dumb fucker. And that's nice enough. But you cannot tell that to Haley. You need to say, Sarah came to T-Ball, how many days was I there without any incident? You're saying there's two days with an incident right? Out of seven days of T-ball. So you need to send an email the other five days and say she came to T-ball and everything was fine. I think she's ready to move on to other types of visits. Do you get it? And copy me on the

fucking emails. Blind carbon copy. Okay? I want to see…I want proof

that you're helping me, and then I will give you money.

Tyler responds, that he is just asking for money for Buchanan's van and money to get the tractor fixed. Buchanan replies:

No, absolutely not. Not until you fucking send nice emails and I see

them.

Tyler responds, "So I'm supposed to pay for your van, and your auto insurance."

Buchanan continues:

I don't give a fuck what you pay for. Drop the fucking insurance. I

will get my own. I don't care what you pay anymore. I'm calling your

boss and I'm calling the coaches association. Okay? Because I want

time with my children. I don't get it, you've ruined my life, I'm

ruining yours. That means no money to you for anything. I don't give

a fuck what you have to pay for. Just don't care. Okay?

* * *

So you either help facilitate me having a good life over here with time

with my kids, because the money don't matter, I'm sitting over here

crying. So, I'm not giving you money and helping you out better

yourself and your case until you help me better mine.

(State's Ex. 1).

{¶14} On another recorded call from the same date, Buchanan told Tyler that she wanted him to "make it happen" right now, meaning she wanted Tyler to provide positive reports immediately. She wanted Tyler to "three-way" call the ongoing caseworker while Buchanan was on the phone so that she could hear what Tyler said. Tyler made the call but he had to leave a message on the caseworker's phone because the call went to voicemail.

{¶15} Buchanan then told Tyler he had to "three-way" call his mother and tell her to advocate for Buchanan. Tyler did make the call to his mother, but again he had to leave a message, stating that "we need to back off" of Buchanan, so that Buchanan could have more time with the children. Buchanan told Tyler that she could not get the children back on her own, that she would ruin his entire life if he did not do what she asked.

{¶16} Tyler testified that he did not actually feel comfortable with Buchanan getting more parenting time with the children, but he was afraid of her threats. He testified that he was afraid Buchanan would tell his employer or the coaches association that he was an alcoholic, or that he had a conviction for menacing against Buchanan. Apparently, Buchanan had initially claimed that Tyler raped her vaginally and anally, though ultimately Tyler was only charged with domestic violence, which was later reduced to menacing. Tyler testified that he was afraid

that Buchanan would make the allegations to his employer and to the coaching association, ruining his reputation.

{¶17} Tyler acknowledged his conviction for menacing and he acknowledged that he had been convicted for violating a protection order against Buchanan. He also acknowledged that his relationship with Buchanan was "rocky," indicating that the police had been called to the residence he previously shared with Buchanan over twenty times. Tyler testified that the turmoil in his relationship with Buchanan was one of the primary reasons the children were removed from their care and were found to be dependent.[1]

{¶18} The deputy sheriff who investigated Tyler's report of telephone harassment testified at trial. He indicated that he was familiar with Tyler and Buchanan, having gone out to their residence multiple times. He testified that his prior interactions with Tyler and Buchanan did not lead to any charges.

{¶19} Finally, the ongoing caseworker for the children's services case, Haley W., provided testimony at trial. She testified that the agency did take into consideration reports made by the parents regarding visitation. She also testified that a phone call from the legal custodian would influence her decision-making. Finally,

---

[1] Tyler acknowledged an incident wherein he ran over one of his children's feet with the lawnmower, causing the child to lose four toes. The judgment entry adjudicating the children dependent also stated that on one instance Tyler was so intoxicated law enforcement questioned his ability to care for the children.

Haley testified that the agency did have the authority to provide more or less parenting time, as long as it was within the confines of the court order.

Analysis

{¶20} Following the presentation of the State's case, Buchanan made a Crim.R. 29 motion for acquittal. She argued that she could not be convicted of extortion because she was not acting with purpose to "obtain any valuable thing or valuable benefit." She argued that seeking favorable reports to children's services in an attempt to acquire more parenting time with her children, whether the reports were true or not, did not meet the definition of a "valuable thing or valuable benefit."

{¶21} Buchanan contended that pursuant to the definition of "anything of value" in R.C. 1.03, an item must essentially be tangible or must include some pecuniary value. Revised Code 1.03 reads as follows:

> As used in any section of the Revised Code for the violation of which there is provided a penalty or forfeiture, unless the context otherwise requires, "anything of value" includes:
>
> (A) Money, bank bills or notes, United States treasury notes, and other bills, bonds, or notes issued by lawful authority and intended to pass and circulate as money;
>
> (B) Goods and chattels;

(C) Promissory notes, bills of exchange, orders, drafts, warrants, checks, or bonds given for the payment of money;

(D) Receipts given for the payment of money or other property;

(E) Rights in action;

(F) Things which savor of the realty and are, at the time they are taken, a part of the freehold, whether they are of the substance or produce thereof or affixed thereto, although there may be no interval between the severing and taking away;

(G) Any interest in realty, including fee simple and partial interests, present and future, contingent or vested interests, beneficial interests, leasehold interests, and any other interest in realty;

(H) Any promise of future employment;

(I) Every other thing of value.

Buchanan emphasized that provisions (A)-(H) all had some either tangible or pecuniary value, and provision (I) should be read in conjunction with the others.

{¶22} The State countered by arguing that even if R.C. 1.03's provisions were relevant, R.C. 1.03(I) provided a "catch-all" under "[e]very other thing of value" that other Ohio Appellate Courts had applied to non-pecuniary things. *State v. Kopras*, Seventh Dist. Jefferson No. 17JE0007, 2018-Ohio-2774, ¶ 56 (relating

specifically to extortion for parenting time); *State v. Cunningham*, 2d Dist. Clark No. 08-CA-09, 2008-Ohio-5164.

**{¶23}** The trial court agreed with the State, and also emphasized that the extortion statute does not use the language "anything of value" that is defined in R.C. 1.03, but rather the language "valuable thing or valuable benefit," thus the statutory definitions in R.C. 1.03 did not control here.

**{¶24}** The jury subsequently convicted Buchanan of one count of extortion. Prior to sentencing, Buchanan filed another motion for acquittal, again arguing that she had not acted with purpose to acquire a valuable thing or valuable benefit as emphasized by an older case from the Fourth District Court of Appeals, *State v. Stone*, 4th Dist. Washington No. 90 CA 23, 1992 WL 56778 (holding that requests for a list of victim's "measurements" demanded by defendant did not constitute a valuable thing or a valuable benefit). Buchanan's argument was again rejected, and she now renews her argument to this Court, claiming that there was insufficient evidence presented to establish the elements of extortion.

**{¶25}** Buchanan contends essentially that, as a matter of law, a "valuable thing or valuable benefit" must include only things or benefits that have monetary value, otherwise there would be no distinction between the extortion and coercion statutes. *Stone* at *6. However, Buchanan does concede that other Ohio Appellate Districts have determined that a "valuable thing or valuable benefit" does not have

to be tangible for purposes of extortion. *Kopras*, *supra*; *Cunningham*, *supra*; *see also State v. Akers*, 6th Dist. Sandusky No. S-99-035, 2000 WL 706795 (determining that freedom from jail constituted a valuable thing or benefit for purposes of the extortion statute). Buchanan asks us to depart from the majority of districts and adopt the holding in *Stone*.

{¶26} After reviewing the record and applicable legal authority, we find Buchanan's reliance on *Stone* misplaced, as it is factually distinguishable and, separately, an outlier legally amongst Ohio Appellate Courts. *Kopras*, *Cunnigham*, and *Akers* all support an affirmance in this matter when viewing the evidence in the light most favorable to the State and these cases all run contrary to Buchanan's argument that "a valuable thing or benefit" must have some pecuniary value. Based on all the evidence in the record, including the phone calls that largely speak for themselves, we cannot find that insufficient evidence was presented to convict Buchanan of extortion where she valued her parenting time with her children and she threatened to expose facts and allegations that would damage her ex-husband's reputation if he did not assist her in getting more parenting time. Thus, her sufficiency argument is not well taken.

{¶27} Finally, we note that Buchanan summarily mentions in her brief that her conviction was also against the manifest weight of the evidence. (Appt.'s Br. at 7). Manifest weight of the evidence is separate and distinct from sufficiency of the

evidence and it requires a different standard of review. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, paragraph two of the syllabus. Buchanan's failure to argue manifest weight separately in her brief is in violation of App.R. 16(A)(7). Nevertheless, in the interests of justice we have reviewed the record, and, giving deference to the jury with respect to credibility as we are directed, we cannot find that the extortion conviction was against the manifest weight of the evidence. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). The evidence supports the jury's determination that Buchanan acted with purpose to obtain any valuable thing or benefit, and that she threatened to expose material tending to subject Tyler to ridicule or damage his personal repute. Therefore, we do not find that the jury clearly lost its way or created a manifest miscarriage of justice. *Thompkins* at 547. This is not the exceptional case where the evidence weighs heavily against the conviction. *Id*. Thus, this argument is also rejected. For all these reasons, Buchanan's assignment of error is overruled.

### Conclusion

**{¶28}** Having found no error prejudicial to Buchanan in the particulars assigned and argued, we affirm the judgment of the Union County Common Pleas Court.

***Judgment Affirmed***

**SHAW and WILLAMOWSKI, J.J., concur.**