[Cite as *State v. Marks*, 2024-Ohio-4863.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## VAN WERT COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

CASE NO. 15-23-11

v.

CRAIG MARKS,

O P I N I O N

    DEFENDANT-APPELLANT.

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

CASE NO. 15-23-12

v.

CRAIG MARKS,

O P I N I O N

    DEFENDANT-APPELLANT.

Appeals from Van Wert County Common Pleas Court
Trial Court Nos. CR-22-08-094 and CR-23-05-058

**Judgments Affirmed**

**Date of Decision: October 7, 2024**

APPEARANCES:

    *Adam J. Banks* **for Appellant**

    *Morgan A. Jackson* **for Appellee**

**MILLER, J.**

{**¶1**} Defendant-Appellant, Craig Marks ("Marks"), appeals his convictions for extortion and failure-to-appear, following joinder of his indictments and a jury trial in the Van Wert County Court of Common Pleas. He challenges the trial court's joinder decision, denial of his motion for change of venue, and jury instructions, as well as the sufficiency and weight of the evidence for his convictions. For the reasons that follow, we affirm.

**I.     FACTS AND PROCEDURAL HISTORY**

{**¶2**} In the fall of 2020, Marks' ex-wife hired attorney Shaun Putman ("Putman") to represent her in a custody dispute regarding their minor children. Putman initiated a domestic relations case on behalf of the ex-wife. Ultimately, the judge in that case terminated the parties' shared parenting plan, designated the ex-wife as the children's sole residential parent and legal custodian, and provided Marks with parenting time.

{**¶3**} Afterward, Marks was upset and started emailing Putman, "sometimes multiple times a day" according to Putman. (Trial Tr. at 159). Marks sent the emails to Putman, his office personnel, and "all sorts of county officials," such as members of the city council, sitting judges, and government offices. (*Id.* at 160). The emails included accusations and statements that scared Putman. Marks also left Putman at least two voicemail messages that, to Putman, "were disparaging and somewhat threatening in nature." (*Id.* at 161). Putman only responded to Marks'

communications twice: once by responding to an email by saying he was sorry if Marks was taking things personally but that Putman was simply doing his job in representing Marks' ex-wife, and the other as an automatic out-of-office message when Putman was on vacation.

{¶4} Putman eventually contacted law enforcement about the communications. However, Marks did not stop his behavior and, after Putman believed the communications had become belligerent, Putman asked that misdemeanor harassment charges be brought against Marks in an attempt to stop them. Once those charges were filed, Marks ceased communicating to Putman. After a period of time, and thinking the matter had resolved itself, Putman asked the prosecutor who handled misdemeanors to consider dismissing the charges against Marks. The prosecutor agreed, and those charges were dismissed in February of 2022.

{¶5} According to Putman, Marks then "started right back up" with sending emails, but they now were more threatening and personal. (*Id.* at 166). This included Marks contacting Putman's wife at her place of employment, which scared Putman. Then, on July 25, 2022, Marks sent Putman and his legal assistant an email, with the subject "BILL-PAY TO ORDER" that stated:

> Shaun Putman is to PAY $30,000 IMMEDIATELY to Craig Marks or his Max LIMIT on Putman Law Firms Errors and Omissions Legal Liability Insurance Policy plus any Reinsurance or Excess Liability they Pay for. It Should be several Million which Shaun Putman IS Liable For. Craig Marks is being Extremely Generous Only Charging Shaun Putman $30,000.

> If Shaun Putman doesn't comply with Payment, Detective Dan Baker and Dan Jones from Youngstown Will Enter Shaun Putman[']s home with Guns in front of His Family.
>
> Money Order or Cash Shaun
>
> This Is A BILL!

(Trial Exhibit 1 at p. 2; *see also* Trial Tr. at 168-175). Putman testified he never owed Marks any money and he never billed Marks for anything. Further, Putman had never represented Marks.

{¶6} Putman took the July 25 email very seriously. Among his concerns with it were: it was sent only to Putman and his legal assistant, which differed from Marks' typical practice of copying county officials; it was personal in nature; it demanded that he pay $30,000 to Marks immediately; and it indicated that Marks was being "extremely generous" in seeking only that amount. Most concerning to Putman was the email's second paragraph, which Putman said put him in fear for his family and for himself. Putman did not know Dan Baker or Dan Jones, and he found the email to be "very, very threatening against both me and my family." (Trial Tr. at 173). Among the measures Putman took in response to the email were: buying a second firearm; obtaining a concealed carry permit for a firearm; bringing a firearm to his office to protect himself and his staff, "with Mr. Marks, exclusively, in mind for that"; asking law enforcement for additional patrols around his house when he knew Marks would be in the area (e.g., for pre-trials); posting pictures of Marks in his office for his "staff to know that if [Marks] comes in, they are to immediately vacate the front of the law office" and contact Putman; and talking to

his neighbors about Marks and asking them to notify law enforcement and Putman if they saw any "concerning activity" at his house. (*Id.* at 174-175). According to Putman, he had never done anything remotely similar concerning any other client or opposing party in the more than twenty years he had been practicing law.

{¶7} Additionally, Putman forwarded the July 25 email to law enforcement. On August 4, 2022, Marks was indicted on two counts of extortion, which commenced trial court case number CR 22-08-094. The charges in both counts were third-degree felonies. The first count alleged that, on or about July 25, 2022, Marks violated R.C. 2903.21 (aggravated menacing) or 2903.22 (menacing) with the purpose to obtain any valuable thing or valuable benefit, in violation of R.C. 2905.11(A)(3). The State's amended bill of particulars explained this count alleged that Marks knowingly caused Putman to believe Marks would cause physical harm or serious physical harm to Putnam's person, property, or immediate family with the purpose of obtaining $30,000. The second count alleged that, on or about July 25, 2022, Marks uttered or threatened any calumny against Putman with purpose to obtain any valuable thing or valuable benefit, in violation of R.C. 2905.11(A)(4).

{¶8} Marks entered a not guilty plea and the case proceeded to several pretrial hearings. On January 13, 2023, Marks' attorney filed a motion for change of venue. He argued that, "due to the relationship with the alleged victim and the community, and further in regards to Defendant's opposition to a large percentage of the bar association of Van Wert, County, Ohio, it will be impossible for

Case No. 15-23-11, 15-23-12

Defendant to receive a fair trial herein." The trial court reserved ruling on the motion until jury selection was attempted.

{¶9} On February 24, 2023, Marks' counsel filed a Motion to Continue, asking the court to continue the trial, which had been set to start on February 27, 2023. On February 27, 2023, during a hearing in open court attended by Marks and his counsel, the trial court granted the motion to continue and rescheduled the trial to start on May 1, 2023. The same day, the court also filed an assignment notice stating that the trial had been assigned for May 1-2, 2023 beginning at 9:00 a.m.

{¶10} On May 1, 2023, the scheduled trial date, Marks failed to appear, although all other parties were present along with the jury. The trial court ordered that a warrant be issued for his arrest. On May 4, 2023, Marks was indicted on one count of failure to appear as required by recognizance, which commenced trial court case number CR 23-05-058.

{¶11} On June 12, 2023, after Marks was arrested on the bench warrant, the State filed a motion for joinder of the two cases, pursuant to Crim.R. 13. Marks' attorney filed a written opposition to the motion, arguing that Marks would be prejudiced by the requested joinder. Following a hearing at which the parties argued the motion, the trial court granted it, thus joining the two indictments for trial.

{¶12} On August 10, 2023, Marks' attorney filed a motion to dismiss based on an argument that the indictment for extortion restricted Marks' freedom of speech. The trial court denied the motion. The case then proceeded to trial, which

took place in a single day on October 2, 2023. The trial court and parties participated in voir dire of the prospective jurors and, after the voir dire process had taken place, the trial court denied Marks' motion for change of venue. During the trial, three witnesses testified for the prosecution, including Putman. Marks did not call any witnesses.

{¶13} At the end of the trial, the jury found Marks guilty on all counts. The trial court found that the two counts for extortion merged, and the State chose to proceed on the first count. The trial court sentenced Marks to 18 months in prison for the extortion conviction and eight months in prison for the failure-to-appear conviction. The trial court ordered the terms to be served consecutively to each other, for an aggregate sentence of 26 months in prison. Marks filed an appeal in both trial court cases, and this court consolidated those two appeals.

## II.    ASSIGNMENTS OF ERROR

{¶14} Marks raises four assignments of error for our review:

### First Assignment of Error

**The trial court erred in joining the offenses against Defendant-Appellant for trial.**

### Second Assignment of Error

**The trial court erred in denying Defendant-Appellant's motion for change of venue.**

**Third Assignment of Error**

**The Defendant's convictions are against the manifest weight and sufficiency of the evidence.**

**Fourth Assignment of Error**

**The trial court erred in its instructions to the jury such to require reversal of Defendant-Appellant's convictions.**

## III. DISCUSSION

**{¶15}** We initially note that, at the final pretrial hearing conducted on September 12, 2023, Marks chose to discharge his attorney and represent himself during his trial. Generally, a pro se defendant is held to the same standard of conforming to legal procedures as an attorney and is expected to abide by the rules of evidence and procedure—regardless of his or her familiarity with them. *State v. Williams*, 2019-Ohio-2335, ¶ 47 (8th Dist.); *State v. Dixon*, 2016-Ohio-7438, ¶ 21 (12th Dist.) (the right of self-representation is not a license for failure to comply with the relevant rules of procedure and substantive laws, and a pro se defendant must accept the results of his or her own mistakes and errors). At the final pre-trial conference, the trial court specifically informed Marks that he would be held to abide by the same rules of evidence and rules of criminal procedure as would a lawyer. *See State v. Johnson*, 2006-Ohio-6404, ¶ 100-105 (trial court's adequate warnings to pro se defendant included that he would be subject to the same rules of procedure and evidence that would apply to any other person).

### A. First Assignment of Error

{¶16} In the first assignment of error, Marks challenges the trial court's decision to join for trial the two indictments against him.

#### 1. Standard of Review

{¶17} "Issues of joinder and severance are generally reviewed under an abuse of discretion standard." *State v. Plott*, 2017-Ohio-38, ¶ 52 (3d Dist.); *see also State v. Thomas*, 2012-Ohio-5577, ¶ 18-25 (3d Dist.) (defendant-appellant did not demonstrate the trial court abused its discretion in permitting the joinder of two cases for trial). A trial court abuses its discretion when its conduct is unreasonable, arbitrary, or unconscionable. *State v. Hill*, 2022-Ohio-4544, ¶ 9.

#### 2. Applicable Law

{¶18} "Joinder is liberally permitted to conserve judicial resources, reduce the chance of incongruous results in successive trials, and diminish inconvenience to the witnesses." *State v. Schaim*, 65 Ohio St.3d 51, 58, 1992-Ohio-31 (1992). "The court may order two or more indictments . . . to be tried together, if the offenses . . . could have been joined in a single indictment." Crim.R. 13. "Two or more offenses may be charged in the same indictment . . . in a separate count for each offense if the offenses charged . . . are based on two or more acts or transactions connected together . . . ." Crim.R. 8. "The law favors joining multiple criminal

Case No. 15-23-11, 15-23-12

offenses in a single trial under Crim.R. 8(A)." *State v. Franklin*, 62 Ohio St.3d 118, 122 (1991).

{¶19} However, "[i]f it appears that a defendant . . . is prejudiced by a joinder . . . for trial together of indictments . . . , the court shall order an election or separate trial of counts . . . or provide such other relief as justice requires." Crim.R. 14. "When a defendant claims that he was prejudiced by the joinder of multiple offenses, a court must determine (1) whether evidence of the other crimes would be admissible even if the counts were severed, and (2) if not, whether the evidence of each crime is simple and distinct." *Schaim* at 59. Generally, an accused is not prejudiced if the answer to either question is "yes." *See, e.g., State v. Coley*, 93 Ohio St.3d 253, 260, 2001-Ohio-1340 (2001); *Franklin* at 122-123 (defendant was not prejudiced by joinder because there was simple and direct evidence of the joined offenses). The purpose of the latter inquiry is to protect against a jury combining evidence to convict the defendant of both offenses, instead of carefully considering the proof offered for each separate offense. *State v. Mills*, 62 Ohio St.3d 357, 362 (1992). Thus, we have explained that a defendant is not prejudiced by joinder if the evidence of each offense is simple and direct, so that a jury is capable of segregating the proof required for each offense. *State v. Shook*, 2014-Ohio-3987, ¶ 21 (3d Dist.); *see also Mills* at 362.

-10-

### 3. Analysis

**{¶20}** Marks does not argue the offenses could not have been joined in a single indictment. *See* Crim.R. 13. Instead, as he did in his opposition to the State's motion for joinder, Marks cites Crim.R. 14 and argues he was prejudiced by the joinder. He contends that "a jury would be more likely to convict [him] on both cases should the jurors believe that he was involved in or culpable in one case but not the other, or in the larger case but not the smaller one." (Appellant's Brief at 16). In other words, "the State was attempting to and was successful in convicting [Marks] of all the charges against him by eliciting evidence of alleged other bad acts in the joint trial." (*Id.*)

**{¶21}** Importantly, the two cases against Marks were directly related. The failure-to-appear offense was based on Marks' failure to appear at his scheduled trial for the extortion offenses. There would necessarily be reference to the extortion trial in order to prove the failure-to-appear charge.

**{¶22}** Regardless of whether evidence of one offense would have been admissible at the trial of the other if they had been tried separately, the evidence of each crime here was simple and distinct. Regarding the extortion offenses, Putman testified about his connection to Marks, the July 25, 2022 email (with its demand he pay $30,000 immediately and threatened consequences if he did not), and the email's effects on him. The email was also admitted into evidence. Regarding the failure-to-appear offense, Marks does not dispute that the evidence was simple and

distinct. A jury would be capable of segregating the proof required for each offense. Applying the law set forth above, the trial court did not abuse its discretion in joining the offenses against Marks for trial. *See* Crim.R. 13; *Coley*, 93 Ohio St.3d at 260-61 (trial court did not err by joining allegedly unrelated offenses for trial, over defense objection, where "the proof of each offense was separate and distinct" and "[t]he jury was not likely to be confused as to which evidence proved" defendant had committed one offense versus which proved he had committed the other offense); *Plott*, 2017-Ohio-38, at ¶ 59 (3d Dist.) (affirming trial court's decision to grant State's joinder motion to consolidate two cases for trial where "the evidence related to each crime was separate and distinct and easily discernible by a jury").

{¶23} Marks' first assignment of error is overruled.

### B. Second Assignment of Error

{¶24} In the second assignment of error, Marks argues that the trial court "abused its discretion as to venue of the case such that [he] did not receive a fair trial." (Appellant's Brief at 18). He claims "that it would be impossible for him to have a fair trial in Van Wert County, Ohio because for years he had been in a custody dispute regarding his ex-wife and his children and had been vocal in his belief that the Van Wert Bar Association attorneys had acted unethically toward him." (*Id.*). Marks also takes issue with the fact the trial court reserved ruling on his motion for change of venue until after the voir dire process for prospective jurors had taken place.

### 1.    Standard of Review

**{¶25}** Whether to change a case's venue rests largely in the discretion of the trial court. *Coley*, 93 Ohio St.3d at 258. "[A] decision not to change venue will not be reversed unless it is clearly shown that the trial court has abused its discretion." *Id.* at 259.

### 2.    Applicable Law

**{¶26}** "Changes in venue help protect fair trial rights." *Coley*, 93 Ohio St.3d at 258. The right to a jury trial "'guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors.'" *Id.*, quoting *Irvin v. Dowd*, 366 U.S. 717, 722 (1961); *see also Sheppard v. Maxwell*, 384 U.S. 333, 362 (1966) ("[d]ue process requires that the accused receive a trial by an impartial jury free from outside influences").

**{¶27}** A trial court "may transfer an action to any court having jurisdiction of the subject matter outside the county in which trial would otherwise be held, when it appears that a fair and impartial trial cannot be held in the court in which the action is pending." Crim.R. 18(B). The Supreme Court of Ohio "has often approved and recommended deferring rulings upon motions for change of venue until after voir dire." *State v. Bayless*, 48 Ohio St.2d 73, 97 (1976), *vacated in part on other grounds by* 438 U.S. 911 (1978). It has recognized the "long-established rule" that the "'examination of jurors on their voir dire affords the best test as to whether prejudice exists in the community against the defendant.'" *State v. Coleman*, 45

Ohio St.3d 298, 302-303 (1989), quoting *State v. Swiger*, 5 Ohio St.2d 151 (1966), paragraph one of the syllabus. Additionally, "[j]urors need not be totally ignorant about the facts of a case." *State v. Clinton*, 2017-Ohio-9423, ¶ 67. Where it appears the prospective jurors' opinions as to the defendant's guilt "'are not fixed but would yield readily to evidence, it is not error to overrule an application for a change of venue, in absence of a clear showing of an abuse of discretion.'" *Coleman* at 302-303, quoting *Swiger* at paragraph one of the syllabus.

### 3. Analysis

{¶28} The trial court conducted a thorough jury selection process. This included the jurors completing a questionnaire prior to trial. Although Marks had copied numerous county officials on emails he sent to Putman, there was no indication this was a highly publicized case. In fact, no prospective juror indicated he or she had ever read or heard about it.

{¶29} During voir dire, Marks listed a number of attorneys and then challenged for cause anyone who indicated he or she had ever had contact with one of those attorneys—regardless of how insignificant or remote in time the contact had been. The trial court then further questioned each of those prospective jurors. The trial court removed a prospective juror that Putman had represented on some estate matters. *See Clinton*, 2017-Ohio-9423, at ¶ 67. The questioning and evidence did not show any remaining jurors were biased or would be unable to render fair and impartial verdicts based on the evidence presented during the trial.

Furthermore, Marks did not exercise any peremptory challenges. *See Bayless*, 48 Ohio St.2d at 98-99 (no abuse of discretion where, although a prospective juror expressed an opinion that the defendant was guilty, he told the trial court he could render a fair and impartial finding based on the evidence presented and the defendant did not further question, challenge for cause or use a peremptory challenge to remove him).

**{¶30}** After voir dire was completed, the trial judge denied the motion for change in venue. The trial court's decision that a fair and impartial trial could be held in Van Wert County "does not reflect an attitude which was unreasonable, arbitrary or unconscionable and therefore there was no abuse of discretion." *Coleman*, 45 Ohio St.3d at 303 (rejecting defendant's assertion that he was denied a fair trial when the trial court denied his motion for a change of venue); *see also State v. Weaver*, 2007-Ohio-3357, ¶ 17-23 (5th Dist.) (trial court did not abuse its discretion in denying appellant's motion to change venue in extortion case after conducting voir dire, where jurors who had pre-trial impressions assured the court they could decide the case solely on the evidence presented at trial).

**{¶31}** Marks' second assignment of error is overruled.

### C.     Third Assignment of Error

**{¶32}** In the third assignment of error, Marks asserts that his convictions are against the manifest weight and sufficiency of the evidence.  However, he never mentions, let alone makes any argument challenging, his conviction for failure-to-appear.  Therefore, we limit our review to only the extortion charge for which he was found guilty and sentenced.[1]  Marks specifically contends that the State did not prove his "intent to extort" and that Putman's testimony "requires a finding that [Putman] felt no threat whatsoever."  (Appellant's Brief at 22).

#### 1.     Standard of Review

**{¶33}** Whether the evidence is legally sufficient to sustain a verdict is a question of law.  *State v. Dent*, 2020-Ohio-6670, ¶ 15.  Thus, our review is de novo. *Id.*  A sufficiency challenge disputes whether a party met its burden of production at trial.  *State v. Messenger*, 2022-Ohio-4562, ¶ 26.  "In a sufficiency-of-the-evidence inquiry, the question is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt."  *Dent* at ¶ 15, citing *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.  Thus, "[i]n

---

[1] We need not address the second count for extortion.  The trial court merged that count with the first count of extortion for sentencing and, therefore, technically Marks does not have a final conviction and sentence for that charge. *E.g., State v. Howard*, 2023-Ohio-4618, ¶ 13, 30 (1st Dist.) ("we do not consider a challenge to the sufficiency or the weight of the evidence regarding the offenses" that had been merged into offenses for which defendant was sentenced); *State v. Carter*, 2022-Ohio-1444, ¶ 48, fn. 7 (3d Dist.) ("we generally do not have to address the weight of evidence with regard to . . . counts that were merged pursuant to sentencing" if the count(s) for which the defendant was convicted and sentenced are not reversed).

assessing the sufficiency of the evidence, we do not resolve evidentiary conflicts or assess the credibility of witnesses." *State v. Jackson*, 2023-Ohio-2193, ¶ 26 (3d Dist.); *see also Jenks* at 279.

**{¶34}** On the other hand, the "manifest-weight-of-the-evidence standard of review applies to the state's burden of persuasion." *Messenger* at ¶ 26. "[W]e review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that we must reverse the conviction and order a new trial." *State v. Wilks*, 2018-Ohio-1562, ¶ 168. Yet, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 2012-Ohio-5233, ¶ 9 (3d Dist.), quoting *State v. Hunter*, 2011-Ohio-6524, ¶ 119. To reverse a judgment from a jury trial on the weight of the evidence, all three appellate judges must concur. Ohio Const., art. IV, § 3(B)(3).

### 2. Applicable Law

**{¶35}** Focusing on the extortion offense for which Marks was convicted and sentenced, the extortion statute provides: "No person, with purpose to obtain any valuable thing or valuable benefit or to induce another to do an unlawful act, shall do any of the following: . . . (3) Violate section 2903.21 or 2903.22 of the Revised Code." R.C. 2905.11(A)(3). In turn, R.C. 2903.21 and 2903.22 are the statutes for

-17-

aggravated menacing and menacing, respectively. The *aggravated* menacing statute states:

> No person shall knowingly cause another to believe that the offender will cause *serious* physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family. . . . [T]he other person's belief may be based on words or conduct of the offender that are directed at or identify a corporation, association, or other organization that employs the other person or to which the other person belongs.

(Emphasis added.) R.C. 2903.21(A). This exact same language comprises the menacing statute, with the exception of the additional word "serious." R.C. 2903.22(A)(1). In other words, "[t]he sole difference between the two offenses is the degree of harm threatened," with aggravated menacing involving "serious physical harm," while menacing merely involving "physical harm." *Cleveland v. Mojsoski*, 2012-Ohio-4589, ¶ 9 (8th Dist.).

### 3. Analysis

**{¶36}** Putman testified at trial that the July 25, 2022 email was the communication that caused him to contact law enforcement (after having the misdemeanor charge dropped) because of its demand for Putnam to pay $30,000 immediately accompanied by the threat of two men—who Putman did not know—coming into his house with guns. Putman also testified that he felt very threatened by the email for both himself and his family. This was further supported by testimony that he took several measures to protect himself, his family, and his business in response to the email.

**{¶37}** After viewing the evidence in a light most favorable to the prosecution, we find that a rational trier of fact could have found—beyond a reasonable doubt—the essential elements of extortion under R.C. 2905.11(A)(3) to find Marks guilty of committing extortion. The evidence at trial showed that, through his July 25, 2022 email to Putman, Marks acted with purpose to obtain $30,000 and knowingly caused Putman to believe Marks would physically harm him or his family. (Trial Exhibit 1; Trial Tr. at 167-175).

**{¶38}** We also reject Marks' manifest-weight-of-the-evidence claim. Having reviewed the record, we do not find that this is an exceptional case where the jury clearly lost its way and created a manifest miscarriage of justice by convicting Marks for extortion under R.C. 2905.11(A)(3). *See State v. Buchanan*, 2023-Ohio-125, ¶ 26-27 (3d Dist.) (sufficient evidence supported defendant's extortion conviction and the conviction was not against the weight of the evidence); *Weaver*, 2007-Ohio-3357, at ¶ 8, 66-67 (5th Dist.) (rejecting sufficiency and manifest weight challenges to extortion conviction, where defendant said to victim, "[y]ou lied in court, you son of a bitch" and warned victim "I will get you if it is the last thing I ever do, you cocksucker," and victim testified he felt threatened and was concerned for his personal safety and that of his family and business).

**{¶39}** Marks argues that, although he "made disparaging remarks about Mr. Putman and others," he "was perfectly entitled to do so pursuant to his 1st and 14th Amendment rights to freedom of speech" and "the Ohio Constitution at Article I,

Section 11." (Appellant's Brief at 21). We disagree. As an initial matter, "[u]nder the Ohio Constitution, free speech guarantees are no broader than those guaranteed by the First Amendment to the United States Constitution." *Cleveland v. Trzebuckowski*, 85 Ohio St.3d 524, 528, 1999-Ohio-285 (1999). "The First Amendment is the proper basis for interpretation of Section 11, Article I, Ohio Constitution, the provision that establishes those free speech guarantees in Ohio." *Id.*

{¶40} "The First Amendment generally prevents government from proscribing speech . . . because of disapproval of the ideas expressed." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992). "[H]owever, our society, like other free but civilized societies, has permitted restrictions upon the content of speech in a few limited areas, which are 'of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.'" *Id.* at 382-383, quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942). "[T]hreats which intimidate or cause fear or apprehension by the recipient are unprotected by the First Amendment." *State v. Myers*, 2000-Ohio-1677, 2000 WL 327238, *3 (3d Dist. Mar. 30, 2000); *see also Watts v. United States*, 394 U.S. 705, 707 (1969) ("[w]hat is a threat [of physical violence] must be distinguished from what is constitutionally protected speech"). The crimes of menacing and aggravated menacing are "triggered by a threat which intimidates or causes fear or apprehension by the recipient." *Dayton v. Dunnigan*, 103 Ohio

App.3d 67, 71 (2d Dist. 1995). Thus, "[s]uch threats are not among the class of utterances which are protected by the First Amendment." *Id.*; *see also State v. Kitts*, 2004-Ohio-5208, ¶ 34 (8th Dist.) (conviction for intimidation did not violate defendant's right to free speech, where he was convicted "because of his threat to the detectives that he would release his dog so that it would 'kill them' and 'eat their faces off'"). The threat Marks made in his email to Putman on July 25, 2022, for which he was convicted of extortion, was not protected speech under the U.S. or Ohio Constitutions.

**{¶41}** Marks also argues that he went to trial "under the impression that Extortion was not a crime of violence based upon the pretrial ruling of the Trial Court." (Appellant's Brief at 21). According to Marks, it "therefore must be presumed that he did not engage in in-depth questioning as to the issue of threats and threats of violence for that reason." (*Id.*). Among other potential reasons why this argument fails is that it is based on a faulty premise. The trial court did not make a "pretrial ruling" that extortion is not a crime of violence. To support his argument, Marks cites a transcript from the final pre-trial, but the transcript does not substantiate his assertion. (*See* Sept. 12, 2023 Tr.).

**{¶42}** Marks' third assignment of error is overruled.

### D.  Fourth Assignment of Error

**{¶43}** In the fourth assignment of error, Marks contends that the trial court erred in its instructions to the jury and, therefore, his convictions must be reversed.

He makes three specific arguments in support. First, he complains that preliminary jury instructions were given to the jury immediately after being seated, but were not repeated at the close of evidence. Second, he says the jury instructions did not state the essential elements of the crimes, and the instructions concerning the first count of extortion did not explain the meaning of "Section 2903.21 or Section 2903.22." Third, he declares he "was clearly prejudiced by the failure of the Trial Court to include the menacing instructions in the final instructions." (Appellant's Brief at 23).

{¶44} Among the trial court's preliminary instructions, which were given to the jury prior to the parties' opening statements, were the following:

> The case before you began with the filing of the indictment. . . . The indictment in Count One of Case 22-08-094 alleges that on or about the 25th day of July, 2022, in the County of Logan [sic], in the County of Van Wert, Craig Marks did, with privilege to obtain any valuable thing or valuable, uh, benefit threaten to commit Aggravated Menacing in Violation of 2903.21 or Menacing in violation of 2903.22. The charge is a felony of the third degree. . . .

> Please keep these instructions in mind as you listen to the evidence and the statements of counsel. I may give you additional instructions during the trial. When the evidence and closing arguments are concluded, I will give you additional instructions on the law which you are to follow, together with any, uh, instructions you have heard at any given [sic] during the conduct of the trial.

(Trial Tr. at 135-136, 141-142). During her closing arguments, the prosecutor explained that the first count for extortion alleged "the Defendant with purpose to obtain anything of value did, uh, violate the aggravated menacing statute or the menacing statute, and it took place in the Venue where the crime took place, which

is Van Wert County." (*Id.* at 276). She went on to explain the meaning of aggravated menacing and menacing and argued why the State had established the elements of the crime beyond a reasonable doubt.

{¶45} The trial court's final instructions to the jury included the following statements:

> Count 1 of CR-22-08-094: The defendant is charged with Extortion. Before you can find the Defendant guilty, you must find beyond a reasonable doubt that on or about the 25th day of July, 2022, in the County of Van Wert, Craig Marks did, with purpose to obtain any valuable thing or valuable benefit, threaten [sic] violated section 2903.21 or section 2903.22 of the Revised Code, in violation of 2905.11(A)(3), 2905.11(B). This charge is a felony of the third degree.
>
> . . .
>
> Aggravated menacing means the Defendant knowingly caused the alleged victim to believe that the Defendant would cause serious physical harm to the alleged victim or the alleged victim's property, unborn family member or a member of the alleged victim's immediate family.
>
> Menacing means the Defendant knowingly caused the alleged victim to believe that the Defendant would cause physical harm to the alleged victim or the alleged victim's property, unborn family member or a member of the alleged victim's immediate family. . . .

(*Id.* at 295-296, 298-299). Among other things, the trial court's final instructions also defined "purpose," "knowingly," "serious physical harm to person," and "physical harm to person." (*Id.* at 298-300).

### 1. Standard of Review

{¶46} Generally, appellate courts review alleged errors in jury instructions for an abuse of discretion, although whether the jury instructions correctly state the

law is a question that is reviewed de novo. *See State v. Chavez*, 2020-Ohio-426, ¶ 58 (3d Dist.); *State v. Green*, 2023-Ohio-4360, ¶ 79 (3d Dist.). However, if a defendant failed to object to the instruction, then he or she has forfeited all but plain error on appeal. *Chavez* at ¶ 59; *Green* at ¶ 78; *see also* Crim.R. 30(A) ("[o]n appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection").

{¶47} Under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "By its very terms, the rule places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial." *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68 (2002). "First, there must be an error, i.e., a deviation from a legal rule." *Id.* "Second the error must be plain," meaning an obvious defect in the trial proceedings. *Id.* "Third, the error must have affected 'substantial rights,'" meaning "that the trial court's error must have affected the outcome of the trial." *Id.* "Even if a forfeited error satisfies these three prongs, however, Crim.R. 52(B) does not demand that an appellate court correct it." *Id.* The Supreme Court of Ohio has "acknowledged the discretionary aspect of Crim.R. 52(B) by admonishing courts to notice plain error 'with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice.'" *Id.*, quoting *State v. Long*, 53 Ohio St.3d 91 (1978), paragraph three of the syllabus.

### 2. Applicable Law

**{¶48}** "Before the taking of evidence, a trial court may give preliminary instructions to the jury appropriate for the jury's guidance in hearing the case." *State v. Comen*, 50 Ohio St.3d 206 (1990), paragraph one of the syllabus. "After arguments are completed, a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." *Id.* at paragraph two of the syllabus. The Supreme Court of Ohio in *Comen* further elaborated:

> If the preliminary or cautionary instructions include matters of law vital to the rights of a defendant, the trial court is not excused from including or repeating all such instructions after the arguments are completed. Repeating instructions means fully instructing the jury on the law applicable to the case and not providing them simply with a cursory reminder of what was earlier provided in either the preliminary or cautionary instructions. Regardless of the length of trial, the court cannot assume the jury recalls or remembers the prior instructions.

*Comen* at 209. Additionally, Criminal Rule 30, which the Court in *Comen* interpreted, specifically provides the following:

> The court shall inform counsel of its proposed action on the requests [from any party that the court instruct the jury on the law as set forth in the requests] prior to counsel's arguments to the jury and shall give the jury complete instructions after the arguments are completed. The court also may give some or all of its instructions to the jury prior to counsel's arguments. The court shall reduce its final instructions to writing or make an audio, electronic, or other recording of those instructions, provide at least one written copy or recording of those instructions to the jury for use during deliberations, and preserve those instructions for the record.

Crim.R. 30(A).

### 3. Analysis

**{¶49}** Marks did not object to the jury instructions except in one narrow respect: he objected that the definition of extortion provided by the trial court was "not the actual definition" of extortion because extortion "is the crime of obtaining something from someone" but he "obtained nothing." (Trial Tr. at 303). The trial court responded by explaining that its instruction on the definition was taken from the criminal code. Marks made no further objection, including at the end of the instructions when the court specifically gave him the opportunity. He never brought to the attention of the trial court the arguments he now makes on appeal. *See* Crim.R. 52. Therefore, we review this assignment of error for plain error. *See State v. Estelle*, 2021-Ohio-2636, ¶ 12, fn. 1 (3d Dist.).

**{¶50}** We acknowledge the jury instructions given at trial could have been worded more plainly. However, we find no plain error. The trial court's final instruction regarding the first extortion count, and subsequent definitions for aggravated menacing and menacing, essentially tracked the statutory language for those offenses. More importantly, even if we assume the first two requirements for plain error have been met, we do not find Marks has shown the alleged error by the trial court "affected the outcome of the trial." *Barnes*, 94 Ohio St.3d at 27; *see also State v. West*, 2022-Ohio-1556, ¶ 22 (under the standard for plain-error review, the defendant bears the burden of showing that, but for a plain or obvious error, the outcome of the proceeding would have been otherwise). This is particularly the

case here due to the significant evidence supporting Marks' convictions. *See State v. Millay*, 2012-Ohio-3776, ¶ 29 (5th Dist.) (where "abundant evidence" supported appellant's convictions, appellant could not "demonstrate that had the court repeated all preliminary instructions at the end of the trial, the result of the proceeding would have been different"); *State v. Lindsey*, 2010-Ohio-5859, ¶ 31 (10th Dist.) ("assuming the provided jury instructions were in error, appellant has failed to demonstrate plain error because the error did not affect the outcome of the trial").

**{¶51}** Additionally, Marks never supports his assertion that the jury instructions "did not state the essential elements of the crimes," and we disagree with that assertion. Marks argues that it is unknown whether the jurors found he committed extortion by violating the aggravated menacing statute or the menacing statute. In other words, it is unknown whether they all agreed that he had committed aggravated menacing or that they all agreed that he had committed menacing. However, this does not matter because menacing is a lesser-included offense of aggravated menacing, such that anyone who has committed aggravated menacing has also committed menacing. *Mojsoski*, 2012-Ohio-4589, at ¶ 9 (8th Dist.). Thus, given the jurors' verdict, all agreed that Marks had (at least) committed menacing, and R.C. 2905.11(A)(3) provides that a person is guilty of extortion if he or she, with purpose to obtain any valuable thing, commits menacing. *See also State v. Newkirk*, 1985 WL 10497, *2-3 (10th Dist. Nov. 5, 1985) (no plain error where there was no objection nor request for an additional instruction that one alternative

-27-

for committing the offense must be found unanimously and, in any event, the jury had obviously found requirement at issue unanimously because of its guilty verdict to another crime whose elements included the requirement).

**{¶52}** Therefore, Marks' argument is not well-taken because he has not shown the trial court committed plain error.

**{¶53}** Marks' fourth assignment of error is overruled.

## IV.    CONCLUSION

**{¶54}** For the foregoing reasons, Marks' assignments of error are overruled. Having found no error prejudicial to the appellant in the particulars assigned and argued, we affirm the judgment of the Van Wert County Court of Common Pleas.

*Judgment Affirmed.*

**WILLAMOWSKI, P.J. and ZIMMERMAN, J., concur.**

**/jlm**