[Cite as *State v. Gonzales*, 2026-Ohio-1079.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio

    Appellee

v.

Jamie R. Gonzales

    Appellant

Court of Appeals No.   {87}WD-25-024
{87}WD-25-034

Trial Court No.  2024 CR 0186
2024 CR 0185

**<u>DECISION AND JUDGMENT</u>**

Decided: March 27, 2026

\* \* \* \* \*

Paul A. Dobson, Wood County Prosecuting Attorney, and
Morgan L. Spitler, Assistant Prosecuting Attorney, for appellee.

Karin L. Coble, for appellant.

\* \* \* \* \*

**SULEK, J.**

**{¶ 1}** Defendant-appellant, Jamie Gonzales, appeals a judgment of the Wood County Court of Common Pleas which, following a jury trial finding him guilty of two counts of failure to register, sentenced him to a total of 18 months of imprisonment. Because Gonzales' constitutional rights were not violated and the convictions were supported by sufficient evidence, the judgment is affirmed.

## I. Facts and Procedural History

{¶ 2} In 2015, Gonzales was convicted of voyeurism.  As a Tier I sex offender, for 15 years he was required to register his residence and place of employment in the county after establishing residency, temporary domicile, or employment of more than three days.

{¶ 3} On May 2, 2024, the Wood County Grand Jury indicted Gonzales on two counts of failure to register spanning dates February 1, 2024 through April 30, 2024 and April 13, 2024 through April 22, 2024.[1]

{¶ 4} During a July 1, 2024 pretrial, the court granted Gonzales' appointed counsel's request to withdraw due to a breakdown in communication.  Gonzales then expressed that he wanted to represent himself and be provided standby counsel.  The court explained the constitutional rights impacted by self-representation and the additional responsibilities.  At the August 12, 2024 pretrial, Gonzales decided that he no longer wanted to represent himself and standby counsel took over.

{¶ 5} On the date of trial, Gonzales again expressed the desire to represent himself.  The court inquired about his understanding of his responsibilities including adherence to the criminal procedure and evidence rules.  He signed the advisement and waiver of right to counsel.  The court then established the following security protocols

---

[1]On the same date, in consolidated case No. 2024-CR-185, the grand jury indicted Gonzales on one count of trespass in a habitation.  Following a mistrial, Gonzales pleaded guilty and the court imposed a six-month prison sentence to be served consecutive to the sentence imposed in this case.

2.

and procedures to be followed during trial:

> Both the State and the defendant will question the witnesses from the table, either standing or sitting.  Neither shall approach the witness.  Each side shall provide a designated person to hand documents to the witness.
>
> Sidebars.  Advisory counsel shall approach with State's counsel.  Advisory counsel shall be permitted to consult at all times with the defendant.
>
> During voir dire, I believe we have 30 minutes each side, and that will be timed.  The case may not be argued in any way while questioning the jurors.
>
> Neither counsel nor parties may engage in efforts to indoctrinate the jurors.
>
> Jurors may anticipate instructions or theories of the law or theories of the law (sic)  as they see it.  This does not prevent general questions concerning the validity or philosophy of reasonable doubt or presumption of innocence.
>
> Jurors may not be asked what kind of verdict they might return under any circumstances.
>
> Questions are to be asked collectively to the entire panel whenever possible.

{¶ 6} Following voir dire and preliminary jury instructions, the court again instructed that the parties would remain seated during questioning, a designated, nonparty individual would approach witnesses with exhibits, and

> any of the sidebars, advisory counsel is going to approach and then advisory counsel will be permitted to consult with Mr. Gonzales as to any matters discussed at the sidebar.  This is because of the defendant's outbursts at the – throughout the proceedings of this case from the initial arraignment going forward, as well as the criminal record of the defendant and for the additional security protections of the Court and the individuals in the gallery as well as the jury.

{¶ 7} During trial, the parties presented the following relevant testimony.  A Bowling Green, Wood County, Ohio temporary staffing agency employee testified that

3.

the agency placed Gonzales for the weeks of April 7 to 13, 2024 and April 14 through 20, 2024. His time sheets were admitted into evidence.

{¶ 8} Bowling Green Police Sergeant Andrew Mulinix testified that on April 16, 2024, he encountered Gonzales in his vehicle in the Bowling Green Bob Evans' parking lot. Mulinix asked him if he was living with his father in Toledo, which was also the address on his license. Gonzales stated that his father's address was a "front address" and that he was homeless and living in his vehicle which was filled with his clothing. At the time of the encounter, Gonzales said he was waiting to go to work.

{¶ 9} Sergeant Mulinix testified regarding two citations Bowling Green Police issued to Gonzales. On April 16, Gonzales was issued an open container citation; he was cited for disorderly conduct on April 19. The citations were admitted into evidence.

{¶ 10} Detective Patrick Mormile, of the Wood County Sheriff's Office, testified that he investigated Gonzales on suspicion of living in Wood County without registering as a sex offender. Mormile identified Gonzales' 2015 certified voyeurism conviction in Bowling Green Municipal Court and his signed Duties to Register; the documents were admitted into evidence. Detective Mormile explained that as a Tier I sex offender, Gonzales has registration requirements until 2030. Specifically, any time the offender's county of domicile or employment changes, the offender must register with the local sheriff's office.

{¶ 11} During his investigation, Detective Mormile became aware of three addresses for Gonzales: one in Toledo, one on South Enterprise Street in Bowling Green,

4.

and homeless. Mormile indicated that even if an offender is homeless, they must still register. Mormile determined that Gonzales did not reside at the Toledo address but could not confirm the South Enterprise address. Detective Mormile determined that Gonzales was employed through a Bowling Green temp agency with a Bowling Green company and that he worked at the company between April 13 and April 22, 2024. Gonzales did not register as a sex offender in either Wood or Lucas Counties between February 1, 2024 and April 30, 2024.

{¶ 12} Gonzales cross-examined Detective Mormile about his incarceration in the Wood County Jail between January 25 and February 23, 2024. Mormile stated that he learned of the incarceration after the fact, during his investigation, though he admitted that he could have checked to see who was incarcerated during those days. He denied knowledge of an obligation to serve the offender with a warning prior to charging a failure to register offense. Mormile agreed that a Tier I sex offender is required to provide annual address updates but he again denied knowledge of a grace period when reporting an address change. The State then rested and the court denied Gonzales' Crim.R. 29 motion for acquittal.

{¶ 13} Gonzales then presented his own testimony in question-and-answer format. He testified that he was incarcerated from January 25, through February 23, 2024 on nonsupport charges. Gonzales believed that his case manager put him on the registry and that he only had to register once annually.

5.

{¶ 14} During his attempt to introduce R.C. 2950.14 as a defense to the charges, the court called a sidebar with the State and standby counsel to discuss its relevancy. The State explained that the section sets forth the ODRC's obligation prior to releasing an offender to inform BCI and the sheriff of the offender's anticipated county of residence. The State claimed that an offender's duty to report is not impacted.

{¶ 15} The court inquired as to whether standby counsel could comment; counsel replied:

> I can't advocate for the admission of it, one, because I cannot engage in hybrid representation. And the second reason is that I agree with the State of Ohio that this is not relevant. I had reviewed it with my client on a number of occasions, and one of the reasons he wanted to engage in self-representation was because he wanted to make a record of these matters[.]

{¶ 16} The court then sustained the State's objection and standby counsel relayed the discussion to Gonzales who became argumentative. After dismissing the jury, the court explained to Gonzales that a court's ruling on objections is part of a trial and is part of the record and may be appealed. The discussion then escalated and the court had Gonzales removed from the courtroom. Following a recess, the court allowed Gonzales to return and instructed the jury to disregard any "outburst or disruption or commotion" that they may have heard or observed as it is not evidence.

{¶ 17} Gonzales testified that he failed to register with Wood County because he felt harassed and discriminated against by police following the disorderly conduct and open container citations. He lost his job when police arrested him for disorderly conduct

6.

and it was "spiritually demoralizing" and he "was just done" and "didn't care." He planned to go back to Toledo.

{¶ 18} During cross-examination, Gonzales agreed that he signed the Duty to Register form. He acknowledged the three-day residence and employment requirements but disputed language regarding reporting requirements absent a "fixed address." Gonzales spent nights at various locations in Wood, Lucas, Marion and Hancock Counties. He agreed that he worked in Wood County.

{¶ 19} At the close of all the evidence, Gonzales renewed his Crim.R. 29 motion which the trial court denied. Following closing arguments and jury instructions and deliberations, the jury found Gonzales guilty of both counts in the indictment. This appeal followed.

## II. Assignments of Error

{¶ 20} Gonzales presents three assignments of error for our review:

Assignment of Error One: The trial court violated Appellant's constitutional right to self-representation in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

Assignment of Error Two: The trial court violated Appellant's constitutional rights to present a complete defense, to a fair trial, and to due process of law by failing to rule on his attempt to introduce evidence, which later resulted in the exclusion of that evidence before the jury, in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution.

Assignment of Error Three: The evidence presented at trial was legally insufficient to sustain a conviction for Count One, failure to register under R.C. 2950.04(E), in violation of Appellant's due process rights under

the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, Section 16 of the Ohio Constitution.

### III. Analysis

### A. Self-Representation

{¶ 21} Gonzales' first assignment of error argues that the trial court violated his right to self-representation by permitting only standby counsel to attend sidebar conferences. The State contends that the restriction was a reasonable safety measure that did not infringe on Gonzales' right to represent himself.

{¶ 22} The Sixth Amendment grants a defendant the right to self-representation. While this right does not extend to the appointment of standby counsel, once counsel is appointed "there are limits on how involved counsel may be while assisting a self-represented defendant." *State v. McAlpin*, 2022-Ohio-1567, ¶ 63, citing *State v. Hackett*, 2020-Ohio-6699, ¶ 10.

{¶ 23} In determining whether a defendant's self-representation rights have been respected, the primary focus is whether the defendant had a fair chance to present his case in his own way. *McKaskle v. Wiggins*, 465 U.S. 168, 177 (1984). Nothing prevents standby counsel from providing advice to a criminal defendant on evidentiary or procedural matters, so long as the involvement of standby counsel does not reach the level of "unsolicited and excessively intrusive participation" that is at odds with a criminal defendant's right to self-representation. *Id.* In addition, "'participation by standby counsel without the defendant's consent should not be allowed to destroy the jury's perception that the defendant is representing himself.' Standby counsel violates

8.

that tenet if they become 'excessive[ly] involve[d]' in the trial such that the jury's perception of the defendant's autonomy is undermined." *McAlpin*, 2022-Ohio-1567, ¶ 64, quoting *McKaskle* at 178, 181-182.

{¶ 24} "A violation of a defendant's right to self-representation is considered structural error." *McAlpin* at ¶ 65, citing *McKaskle* at 177, fn. 8.

> Structural errors 'defy analysis by "harmless-error" standards,' [*Arizona v.*] *Fulminante*, [499 U.S. 219], 309, 111 S.Ct. 1246, for three reasons: (1) "the right at issue is not designed to protect the defendant from erroneous conviction but instead protects some other interest,'" *Weaver* [*v. Massachusetts*, 582 U.S. 286],295, 137 S.Ct. 1899, (2) "the effects of the error are simply too hard to measure," *id.*, and (3) "the error always results in fundamental unfairness," *id.* at 296. But a structural error need not satisfy all three criteria: "An error can count as structural even if the error does not lead to fundamental unfairness in every case.

*Id.* The court then explained:

> As we have observed more than once, the plain-error rule still applies to errors that were never objected to at trial, even if those errors can be classified as structural. *See State v. Hill*, 92 Ohio St.3d 191, 199, 749 N.E.2d 274 (2001) (noting that the United States Supreme Court has "found that it had no authority to create a 'structural error exception' to the [plain-error] rule, and seemed to hold that, in direct appeals from federal convictions, a structural error analysis is inappropriate in a plain-error situation"), citing *Johnson v. United States*, 520 U.S. 461, 466, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997); *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 59 (holding that "counsel's failure to object to the closing of the courtroom constitutes a waiver of the right to a public trial"). Because McAlpin failed to timely object to the alleged error, our review is subject to the plain-error standard. To establish plain error, McAlpin must show that an error occurred, that the error was obvious, and that there is "a reasonable probability that the error resulted in prejudice," meaning that the error affected the outcome of the trial. (Emphasis sic.) *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22.

*McAlpin* at ¶ 66.

9.

{¶ 25} The court determined that the defendant failed to demonstrate plain error in standby counsel's interference in his ability to obtain a DNA report as it would not have aided his defense. *Id.* at 90. *See State v. West*, 2022-Ohio-1556 (a plain error analysis is appropriate in raising an unobjected-to structural error claim of judicial bias)

{¶ 26} Following *McAlpin* and *West*, in *State v. Bond*, 2022-Ohio-4150, the Ohio Supreme Court examined whether the partial closure of the courtroom during trial violated the constitutional right to a public trial, a structural error. Similar to those cases, Bond failed to object to the closure and the court acknowledged that a plain-error analysis applied on review. Clarifying the scope of the plain error analysis in cases of structural error, the court concluded that

> [i]n order, then, to honor the nature of a structural error within a plain-error analysis, we must recognize that a defendant may show that a structural error to which he has failed to object at trial may have affected substantial rights for the purposes of a plain-error analysis, even if the defendant cannot show that but for the error, the outcome of the trial would have been different.

*Id.* at ¶ 33. Even assuming under a plain error analysis that the error affected substantial rights the court must then consider "whether correcting the error is required to prevent a manifest miscarriage of justice or whether the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at ¶ 35.

{¶ 27} Here, Gonzales agreed to the court's appointment of standby counsel. Prior to the trial's commencement, the court twice advised Gonzales that standby counsel would approach the bench for sidebar conferences and then relay the information to him. Throughout the trial standby counsel participated in five sidebars, only one of which, as

10.

previously discussed, related to an evidentiary matter. During that sidebar, standby counsel exceeded his advisory role by advocating against the admission of evidence that Gonzales sought to introduce. Nonetheless, because Gonzales never objected to standby counsel attending the sidebar conferences, he has forfeited all but plain error review. *McAlpin* at ¶ 66.

{¶ 28} The crux of Gonzales' argument is that standby counsel prevented him from providing his own defense and undermined his control over the trial by arguing against the admission of evidence he sought to introduce. Reviewing the trial transcript, Gonzales conducted his own voir dire, opening and closing arguments, direct and cross-examinations of witnesses, and participated in all other aspects of the trial including raising and defending objections. Thus, Gonzales controlled the presentation of his case. Even assuming that standby counsel's presence at sidebar conferences usurped his self-representation rights, upon review, Gonzales has not demonstrated that correction of such error is mandatory to prevent a manifest miscarriage of justice. Gonzales' first assignment of error is not well-taken.

## B. Admission of Evidence

{¶ 29} In his second assignment of error, Gonzales claims that the trial court erroneously failed to rule on his request to admit Exhibit C, a record of his incarceration, which ultimately led to the exclusion of the document. Gonzales further contends that he should have been allowed to admit copies of multiple sections of R.C. Chapter 2950,

11.

which may have included R.C. 2950.07, providing that the reporting requirements are tolled during an offender's incarceration.

{¶ 30} While cross-examining Detective Mormile, Gonzales marked three documents as Exhibits A, B, and C. The State asked if Gonzales wanted the documents admitted into evidence, he responded: "Yeah I want them in there so they can see that I was incarcerated on the date – yes, that's got to go in there because I was incarcerated on the date he's saying I failed to register." Gonzales then questioned Detective Mormile using Exhibit C, a record of his January 25, 2024 through February 23, 2024 Wood County Jail incarceration.

{¶ 31} During his closing argument, Gonzales referenced Exhibit C, and the court and State expressed that it was never admitted into evidence. The court explained that he could comment on the testimony regarding the jail dates, just not the exhibit.

{¶ 32} On the second morning of trial, Gonzales requested that he be provided copies of various statutes under R.C. Chapter 2950; he specifically requested R.C. 2950.04, 2950.05, 2950.06, 2950.12, and 2950.14. The State indicated its willingness to provide the copies. Later that day, the State objected when Gonzales attempted to introduce R.C. 2950.14 into evidence. The court ultimately determined it was irrelevant and its admission could confuse the jury.

{¶ 33} Regarding the admission of Exhibit C, as explained to Gonzales prior to trial, "a pro se defendant is held to the same standard of conforming to legal procedures as an attorney and is expected to abide by the rules of evidence and procedure—

12.

regardless of his or her familiarity with them." *State v. Marks*, 2024-Ohio-4863, ¶ 15 (3d Dist.), citing *State v. Williams*, 2019-Ohio-2335, ¶ 47 (8th Dist.). Ohio courts maintain a two-step process for the admission of exhibits into evidence. First, the item must be marked as an exhibit and then the proponent must move for its admission after laying a proper foundation under Evid.R. 901. A trial court has broad discretion in the admission or exclusion of evidence. *State v. Smith*, 2021-Ohio-3997, ¶ 33, citing *State v. Sage*, 31 Ohio St.3d 173, 180 (1987).

{¶ 34} While Gonzales marked the exhibits and expressed the desire to get "them in there" he failed to formally move to admit them into evidence. Even assuming that Gonzales' statements could be construed as a formal request for admission, he presented no foundation testimony demonstrating the reliability of Exhibit C and Detective Mormile expressed that he was not familiar "with seeing papers like this." Thus, the court did not abuse its discretion by either not ruling on his request for admission or not admitting the documents into evidence.

{¶ 35} As to Gonzales' claims regarding the admission of various statutory sections under R.C. Chapter 2950 and, particularly R.C. 2950.14, there is no evidence that the trial court abused its discretion in concluding that the sections were not relevant or would confuse the jury. Further, there is no indication that R.C. 2950.07, which was potentially relevant, had been requested and provided by the State. Gonzales' second assignment of error is not well-taken.

13.

## C. Sufficiency of the Evidence

{¶ 36} Gonzales' third assignment of error claims that his conviction for failure to register his place of residence was based on legally insufficient evidence. In reviewing a sufficiency of the evidence claim, "'[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Fenderson*, 2022-Ohio-1973, ¶ 73 (6th Dist.), quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 37} The jury convicted Gonzales of failure to register his residence and failure to register his place of employment. Relevant here, R.C. 2950.04 provides:

> (E) No person who is required to register pursuant to divisions (A) and (B) of this section, and no person who is required to send a notice of intent to reside pursuant to division (G) of this section, shall fail to register or send the notice of intent as required in accordance with those divisions or that division.

{¶ 38} Division (A) provides:

> (2) Regardless of when the sexually oriented offense was committed, each offender who is convicted of, pleads guilty to, has been convicted of, or has pleaded guilty to a sexually oriented offense shall comply with the following registration requirements described in divisions (A)(2)(a), (b), (c), (d), and (e) of this section:
>
> (a) The offender shall register personally with the sheriff, or the sheriff's designee, of the county within three days of the offender's coming into a county in which the offender resides or temporarily is domiciled for more than three days.

{¶ 39} Gonzales contends that the State failed to prove that he was residing or temporarily domiciled in Wood County for more than three consecutive days, triggering

14.

his duty to register. The State counters that the circumstantial evidence presented at trial sufficiently demonstrated that Gonzales resided in Wood County during the timeframe charged in the indictment.

{¶ 40} During trial, Sergeant Mulinix testified that on April 16, after being called on a suspicious vehicle report, Gonzales informed him that he was living in his car which was parked at a Bob Evans in Bowling Green, Ohio. He indicated that he was waiting to go to work; police discovered that his job was also located in Bowling Green. Sergeant Mulinix testified that Gonzales was issued a second citation on April 19, also in Bowling Green, Ohio.

{¶ 41} Gonzales agreed that he failed to register either his residence or employment. His initial defense was that the ODRC had a statutory duty to inform the county sheriff of his location. He further claimed that his homelessness obviated his duty to register. He also disputed the legitimacy of his signature on the Duty to Register form claiming duress. When these defenses proved unavailing, Gonzales explained that during the three-week period in April, he was at his "wit's end" and spiritually damaged by the Bowling Green Police Department and that he did not register because he had intended to "go back to Toledo and figure it out up there." He agreed that he spent time at different locations around Wood County but also claimed that he had friends in neighboring counties.

{¶ 42} Upon review, construing the evidence most favorably to the state, sufficient evidence supports the jury's finding that Gonzales failed to register his residence as

15.

required under R.C. 2950.04(E). This evidence includes the officers' testimony combined with Gonzales' ultimate claim that police harassment prevented him from registering his residence or employment in Wood County, not that he did not work or reside there. Gonzales' third assignment of error is not well-taken.

## IV. Conclusion

{¶ 43} Upon due consideration, the judgment of the Wood County Court of Common Pleas is affirmed. Pursuant to App.R. 24, Gonzales is ordered to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, P.J.

_____
JUDGE

Christine E. Mayle, J.

Charles E. Sulek, J.
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.